GIBSON, DUNN & CRUTCHER LLP
KAHN A. SCOLNICK, SBN 228686
kscolnick@gibsondunn.com
JASON C. LO, SBN 219030
jlo@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

GIBSON, DUNN & CRUTCHER LLP
DANA LYNN CRAIG, SBN 251865
dcraig@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SANDEEP KAPIL, GABRIELA GOMEZ, and KIM SALLEN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No. 5:24-cv-09304-NW

**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

Honorable Noël Wise

Date: TBD
Time: TBD
Courtroom: 3

Complaint filed: December 20, 2024

**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

**PLEASE TAKE NOTICE THAT** on a date and time to be determined by the Court, in Courtroom 3, Fifth Floor, before the Honorable Noël Wise, Defendant Apple Inc., by and through its counsel of record, will and hereby does move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss plaintiffs' complaint with prejudice.

First, plaintiffs fail to plausibly allege that Apple caused their injuries, which precludes them from satisfying the standing requirements of Article III as well as those of the Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA). Second, even if plaintiffs had standing, they fail to satisfy the heightened pleading requirements of Rule 9(b), since they do not plead with particularity what was false or misleading about any of the purported Apple statements at issue, nor do they plead any actionable omissions. Third, plaintiffs are not entitled to either injunctive relief or restitution because they have an adequate remedy at law, they do not allege that Apple received any of the money they invested into the scam apps, and plaintiffs Gomez and Sallen did not purchase their iPhones from Apple. Plaintiffs also do not plausibly allege any imminent risk of harm, as necessary to support injunctive relief. Because all of these defects are incurable and any attempt at amendment would be futile, the Court should dismiss this case with prejudice.

This Motion is based on this Notice of Motion; the following Memorandum of Points and Authorities; all documents on file in this action; argument of counsel; and such other matters as the Court may consider.

Dated: March 7, 2025

GIBSON, DUNN & CRUTCHER LLP

*/s/ Kahn A. Scolnick*
Kahn A. Scolnick
*Attorney for Defendant, Apple Inc.*

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES TO BE DECIDED ........ 3

III. FACTUAL BACKGROUND ........ 3

IV. LEGAL STANDARD ........ 4

V. ARGUMENT ........ 5

A. Plaintiffs lack standing to pursue their claims ........ 5

1. Plaintiffs do not and cannot adequately plead that Apple caused their alleged injuries ........ 6

a. The crypto scammers, not Apple, were the legal cause of plaintiffs' alleged losses of their crypto investments ........ 6

b. Plaintiffs do not and cannot plead reliance ........ 9

2. Plaintiffs separately do not have standing under the CLRA ........ 12

B. Plaintiffs' UCL and CLRA claims fail on the merits for additional reasons ........ 13

1. Plaintiffs fail to plead a false or misleading statement under Rule 9(b) ........ 14

2. Plaintiffs fail to plead an actionable omission ........ 17

3. Plaintiffs' UCL claim under the "unlawful" prong separately fails because plaintiffs have not pleaded a predicate violation of the law ........ 19

C. Plaintiffs are not entitled to restitution or injunctive relief ........ 20

D. The complaint should be dismissed with prejudice ........ 24

VI. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

Page

### Cases

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ........ 5

*Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*,
2020 WL 3893395 (E.D. Cal. July 10, 2020) ........ 19

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ........ 14, 15, 17, 19

*Ariz. All. for Retired Ams. v. Mayes*,
117 F.4th 1165 (9th Cir. 2024) ........ 22, 24

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ........ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ........ 10

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ........ 24

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ........ 4

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ........ 22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 22, 23

*Coffee v. Google*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ........ 13

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ........ 21

*Conrad v. Boiron, Inc.*,
869 F.3d 536 (7th Cir. 2017) ........ 24

*Davidson v. Apple Inc.*,
2017 WL 3149305 (N.D. Cal. July 25, 2017) ........ 16

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........ 22, 23

## TABLE OF AUTHORITIES
(continued)

**Page**

*Diep v. Apple Inc.*,
2024 WL 1299995 (9th Cir. Mar. 27, 2024) ........ 14

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ........ 13

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........ 24

*Eckler v. Wal-Mart Stores, Inc.*,
2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ........ 19

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ........ 19, 20

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ........ 13

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005) ........ 8, 9

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ........ 21

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........ 16

*Graham v. Bank of America*,
226 Cal. App. 4th 594 (2014) ........ 8

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........ 24

*Guzman v. Polaris Indus., Inc.*,
2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) ........ 6, 9

*Hall v. Sea World Ent., Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ........ 10

*Heredia v. Sunrise Senior Living LLC*,
2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ........ 20

*Hodson v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........ 18

*In re iPhone 4S Consumer Litig.*,
2013 WL 3829653 (N.D. Cal. July 23, 2013) ........ 12

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ........ 6, 7, 9

## TABLE OF AUTHORITIES
(continued)


**Page**

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)....................5, 13, 14

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011)....................21

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018)....................23

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)....................5

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LCC*,
2019 WL 6218780 (S.D. Cal. Nov. 21, 2019)....................19

*Lorenzo v. Qualcomm Inc.*,
2009 WL 2448375 (S.D. Cal. Aug. 10, 2009)....................8, 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................4, 6, 22, 23

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024)....................7, 8, 9

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018)....................9

*Montana Envt'l Info. Ctr. v. Stone-Manning*,
766 F.3d 1184 (9th Cir. 2014)....................22

*Moore v. Apple Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014)....................10

*Moore v. Geico Gen. Ins. Co.*,
2018 WL 500260 (N.D. Cal. Jan. 19, 2018)....................20

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021)....................17, 24, 25

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)....................4

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014)....................11, 12

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018)....................20

*Perez v. VAS S.p.A.*,
188 Cal. App. 4th 658 (2010)....................9

## TABLE OF AUTHORITIES
(continued)

**Page**

*PhantomALERT v. Apple Inc.*,
2025 WL 71888 (D.D.C. Jan. 10, 2025) ....................20

*Phillips v. Apple Inc.*,
725 F. App'x 496 (9th Cir. 2018) ....................21, 22

*Punian v. Gillette Co.*,
2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ....................19

*Rutter v. Apple Inc.*,
2022 WL 1443336 (N.D. Cal. May 6, 2022) ....................14

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) ....................7

*Sharpe v. Puritan's Pride, Inc.*,
466 F. Supp. 3d 1066 (N.D. Cal. 2020) ....................21

*Simon v. SeaWorld Parks & Ent., Inc.*,
2022 WL 1594338 (S.D. Cal. May 19, 2022) ....................18

*Sims v. Kia Motors Am., Inc.*,
2014 WL 12558251 (C.D. Cal. Oct. 8, 2014) ....................17, 18

*Sloma v. Mercedes-Benz USA, LLC*,
2009 WL 10675023 (C.D. Cal. July 14, 2009) ....................10

*Somers v. Apple Inc.*,
729 F.3d 953 (9th Cir. 2013) ....................5

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................20

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................5

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................11, 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................16

*Williams v. Apple Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) ....................23

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ....................4

*Young v. Cree, Inc.*,
2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ....................11

## TABLE OF AUTHORITIES
(continued)

**Page**

### Constitutional Provisions

U.S. Const. art. III ....................................................................4, 6, 7, 9, 22, 23, 25

### Statutes

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................................................2

Cal. Bus. & Prof. Code § 17204 ....................................................................6

Cal. Civ. Code § 1572 ....................................................................19, 20

Cal. Civ. Code § 1573 ....................................................................19, 20

Cal. Civ. Code § 1709 ....................................................................19, 20

Cal. Civ. Code § 1711 ....................................................................19, 20

Cal. Civ. Code §§ 1750 *et seq.* ....................................................................2, 19

Cal. Civ. Code § 1770 ....................................................................19

Cal. Civ. Code § 1770(a) ....................................................................5, 12

Cal. Civ. Code § 1780(a) ....................................................................6

### Other Authorities

Apple, App Review Guidelines, https://developer.apple.com/app-store/review/guidelines/#legal (last updated Sept. 13, 2024)....................................................................16

### Rules

Fed. R. Civ. P. 9(b) ....................................................................2, 3, 5, 13, 14, 17, 18, 25

Fed. R. Civ. P. 12(b)(1)....................................................................4, 5, 25

Fed. R. Civ. P. 12(b)(6)....................................................................4, 5, 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs contend they are victims of a cryptocurrency scam. They allege that an individual going by the name of Kevin Wilson, a purported investment guru, lured them into the scam by encouraging them to download and use three cryptocurrency apps from the App Store. These apps initially "provided" the plaintiffs hundreds of dollars "to start trading" on the cryptocurrency platforms. But then plaintiffs say they were then duped into depositing additional money into their crypto accounts on these apps. Plaintiffs claim they eventually lost all the money they deposited when Wilson and his co-conspirators ran off with the funds. It is certainly regrettable that anyone falls victim to this sort of scam. But plaintiffs readily concede their money was "stolen by the scammers"—not Apple. Compl. ¶ 42. And plaintiffs freely admit it was the "fraudsters that perpetrated the fraud"—not Apple. *Id.* ¶ 39.

And yet, plaintiffs have sued Apple. They're asking this Court to force Apple to pay them the money the fraudsters stole. The theory underlying plaintiffs' claims is that when someone downloads an app from the App Store, Apple assures them that the third-party app developers will never use their apps to scam users out of money—and if a scam ever does happen, Apple will be on the hook for the users' losses. Plaintiffs' theory is defective as a matter of law and logic.

Plaintiffs never identify which of Apple's statements about the App Store they specifically relied on when purchasing their devices, downloading the crypto apps, or investing their money into the crypto scams. Nor do plaintiffs explain what is false or misleading about any such statement. And even setting these key flaws aside, Apple's general statements about the App Store quoted in the complaint have nothing to do with the scams to which plaintiffs fell prey. The complaint points to statements to the effect that Apple does its best to ensure apps on the App Store are "free of known malware," that the apps will "comply with [Apple's] privacy rules," and that they "haven't been tampered with at the time of installation or launch." Plaintiffs do not contest the truth of these statements; the complaint does not allege that plaintiffs' iPhones were infected by viruses, that they ran into trouble when installing the apps, or that Apple failed to enforce its privacy rules. In other words, plaintiffs claim that Apple misrepresented the safety and security of the App Store, but there are no

plausible allegations it was actually unsafe or unsecure at all, much less in a way that led to their alleged losses.

Instead, plaintiffs are trying to transform Apple's general (and true) statements about app safety and security into a guarantee that Apple eliminates in advance 100% of the risks posed by bad-actor app developers. Apple's statements reflect what Apple does: it makes its best effort to ensure the safety and security of apps before they are approved for download from the App Store. But some developers deliberately violate Apple's rules, and take measures to hide their violations including by changing the nature of their apps *after* Apple has conducted its review process. Plaintiffs' own description of the scheme demonstrates the point ("the victim is gradually *lured* into making increasing monetary contributions. . . to a *seemingly sound investment* before the scammer disappears with the contributed monies"). Against these efforts, even Apple's industry-leading security measures cannot catch every scam *before* it ensnares a victim. And there is no allegation that Apple has ever made such a representation. To the contrary, Apple tells users like plaintiffs that some apps may end up "violat[ing] guidelines" because, as here, they are involved in "fraud" or "malicious activity." And it also tells users it will "immediately remove[]" the offending apps when they are discovered, which, consistent with its representations, is what happened here. The Court should therefore dismiss plaintiffs' claims asserted under California's Unfair Competition Law ("UCL") and the Consumers Legal Remedies Act ("CLRA") with prejudice.

*First*, plaintiffs do not have standing to bring these claims because they have not (and cannot) allege that Apple caused their alleged losses. The third-party fraudsters who ran the crypto scams—not Apple—were the legal cause of any injuries here. To the extent plaintiffs are trying to link their alleged losses to something that Apple said about safety on the App Store, they haven't adequately identified those statements, much less pleaded that they relied on such statements when depositing money into the scam crypto apps.

*Second*, even if plaintiffs had standing and even if they could adequately plead causation and reliance, they haven't pleaded with particularity under Rule 9(b) what was false or misleading about Apple's alleged statements and why, or what additional information Apple should have disclosed.

*Third*, plaintiffs cannot seek equitable relief in the form of restitution or an injunction. As for

restitution, there is no allegation that Apple is in possession of the money that the crypto scammers stole from plaintiffs. As for an injunction, the apps have been removed from the App Store, as plaintiffs concede, and plaintiffs are now well aware of the scam, so there is no risk of future injury to them. In any event, plaintiffs are foreclosed from seeking equitable relief because they have an adequate remedy at law: actual damages under the CLRA.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether plaintiffs have standing to pursue their claims.
2. Whether plaintiffs have sufficiently pleaded with particularity a false or misleading statement under Rule 9(b).
3. Whether plaintiffs have sufficiently pleaded with particularity an actionable omission under Rule 9(b).
4. Whether plaintiffs' UCL claim separately fails under the "unlawful" prong of the statute.
5. Whether plaintiffs may seek restitution or injunctive relief.

## III. FACTUAL BACKGROUND

The complaint alleges the following facts, which are assumed to be true for purposes of this motion only.

Plaintiffs joined an online investment group run by "an individual using the name 'Kevin Wilson,' a claimed financial expert." Compl. ¶ 45; *see also id.* ¶¶ 50, 56. Wilson "encouraged" plaintiffs to download three cryptocurrency trading apps—Digicoins, SolLuna, and Forex5—from the App Store. *Id.* ¶¶ 46, 51, 56. Each plaintiff downloaded at least one of these scam apps onto their iPhones; the apps "provided" $200 to $800 to each of them so that they could start "trading" on the platforms; and plaintiffs then deposited their own money into their accounts on the apps. *Id.* ¶¶ 46, 56, 59. The app developers later drained plaintiffs' accounts. *Id.*

Plaintiff Kapil "lost over a million dollars." Compl. ¶ 49. Plaintiff Gomez "lost approximately $72,000." *Id.* ¶ 55. And Plaintiff Sallen "lost approximately $120,000." *Id.* ¶ 60. The complaint does not allege that Apple took part in the scheme, that Apple had access to plaintiffs' accounts on these scam crypto apps or received any of the money that plaintiffs deposited, that Apple knows who the

fraudsters are or has any relationship with them now, or that Apple made any guarantees about the apps in question.

Although plaintiffs acknowledge it was the "fraudsters that perpetrated the fraud against Plaintiffs" (Compl. ¶ 39), they sued Apple because Apple purportedly made various representations about the safety and security of apps on the App Store (*id.* ¶ 44). The complaint asserts that Apple represented, among other things, that apps "are free of known malware" and "haven't been tampered with at the time of installation or launch." *Id.* ¶¶ 24–25. Apple also represented that "[e]very week, over 500 dedicated experts around the world review over 100k apps" (*id.* ¶ 25), that users can "Download with confidence" (*id.* ¶ 26), and that Apple has told app developers that "Apps should never prey on users or attempt to rip off customers" (*id.* ¶ 28).

Plaintiffs bring a putative class action asserting claims under California's UCL (*id.* ¶¶ 73–83) and CLRA (*id.* ¶¶ 84–97). They seek equitable relief and actual damages in the form of their investment losses and the money they allegedly overpaid for their iPhones. *Id.* ¶¶ 82–83, 95, 97. They also seek an injunction "prohibiting" Apple from committing the alleged violations and "for corrective advertising to inform users regarding [Apple's] failure to comply with its vetting and review of App Store apps." *Id.*, Prayer for Relief.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a case for lack of subject matter jurisdiction. "[A]n Article III federal court . . . lacks subject matter jurisdiction" where plaintiffs fail to satisfy their burden of establishing Article III standing. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also* U.S. Const. art. III; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). "In that event, the suit should be dismissed under Rule 12(b)(1)." *Cetacean*, 386 F.3d at 1174.

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court should grant a motion to dismiss when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1138 (9th Cir. 2012) (affirming order dismissing product-defect claims). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory

or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While allegations of material fact are assumed to be true and viewed in the light most favorable to the plaintiff, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, a motion under 12(b)(1) and 12(b)(6) tests the sufficiency of the allegations, the "district court resolves [the 12(b)(1) motion] as it would a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Claims sounding in fraud are subject to Rule 9(b)'s heightened pleading requirements and "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation marks omitted).

"[To] '[p]revent [ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based,' a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (ellipsis in original).

## V. ARGUMENT

Plaintiffs lack standing to pursue their UCL and CLRA claims, they have not pleaded any fraudulent statement or omission with the requisite particularity under Rule 9(b), and they have no grounds to seek equitable relief. The Court should dismiss these claims with prejudice because the defects cannot be cured by amendment.

### A. Plaintiffs lack standing to pursue their claims

Plaintiffs lack standing because Apple didn't cause their alleged injuries. Plaintiffs also do not plausibly allege they relied on Apple's statements when purchasing their iPhones or using the scam crypto apps. They separately lack standing under the CLRA because they do not allege they paid anything to Apple to download the apps, so they cannot claim that Apple's allegedly deceptive practices resulted "in the sale or lease of goods or services" to them. Cal. Civ. Code § 1770(a).

### 1. Plaintiffs do not and cannot adequately plead that Apple caused their alleged injuries

Plaintiffs assert two theories of liability: (1) that Apple's alleged statements about safety and security on the App Store "caused" them to "download apps created solely for 'pig butchering' schemes and hence to suffer significant economic losses" (Compl. ¶ 6; *see also id.* ¶¶ 81, 89); and (2) that those same statements caused them to overpay for their iPhones (*id.* ¶¶ 81, 87). Both theories fail as a matter of law for lack of causation.

Article III, the UCL, and the CLRA all require that a plaintiff plead causation to establish standing. Article III demands that the plaintiff must show, among other things, a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. To have statutory standing under the UCL and CLRA, a plaintiff must show she suffered injury "as a result of" the improper conduct. Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). In cases like this one, founded on alleged misrepresentations, "a showing of causation requires a showing that Plaintiffs actually relied on Apple's misrepresentations." *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013). In other words, plaintiffs must allege that they saw the alleged misrepresentations and took some action "based on what they saw." *Id.* (finding "actual reliance is an essential element of standing in this case under Article III, as well as the CLRA and UCL"); *see also Guzman v. Polaris Indus., Inc.*, 2020 WL 2477684, at *3–4 (C.D. Cal. Feb. 13, 2020) (finding no reliance and thus no causation where "Plaintiffs never allege[d] that *they* read and relied upon the sticker").

Here, by plaintiffs' own admission, it was the "fraudsters [who] perpetrated the fraud against Plaintiffs and Class members" (Compl. ¶ 39), not Apple. And in any case, plaintiffs have not plausibly pleaded that they actually relied on any of Apple's purported representations when they downloaded and transferred money into the scam apps or purchased their iPhones. Nor do they allege that they purchased their iPhones with the intent to download and then use the types of apps that allegedly caused them harm later. Plaintiffs therefore lack standing to pursue their claims.

#### a. The crypto scammers, not Apple, were the legal cause of plaintiffs' alleged losses of their crypto investments

Plaintiffs' first theory of liability—that Apple is somehow to blame for their alleged loss of

crypto investments—fails because Apple was not the legal cause of those losses. Plaintiffs concede as much in their complaint: They allege "[t]he fraudsters . . . perpetrated the fraud against Plaintiffs and Class members" (Compl. ¶ 39) and that the "money [they] deposited into the [apps was] stolen *by the scammers*" (*id.* ¶ 42 (emphasis added)).

The complaint details the elaborate scheme that the "fraudsters"—not Apple—devised to trick plaintiffs and others out of money. All three plaintiffs joined the same online investment discussion group run by the same scammer, Kevin Wilson, and were all lured into downloading and using the same scam apps that provided them with money to start "trading" on the platforms. *Id.* ¶¶ 46, 51, 56. There are no allegations that Apple had anything to do with Wilson or the investment discussion group he ran on an internet discussion board. There are no allegations that Apple had access to plaintiffs' crypto accounts in Digicoins, SolLuna, or Forex5. There are no allegations that Apple worked in concert with the scammers to steal money from plaintiffs or that Apple has (or ever had) any of the money that was taken. And plaintiffs concede that Apple worked to remove all three apps from the App Store once it learned of the scam. *See id.* ¶¶ 54 (SolLuna), 55 (Digicoins), 58 (Forex5). All of this means that Wilson and the other third-party scammers, not Apple, caused plaintiffs' alleged losses of their crypto investments for purposes of Article III, the UCL, and the CLRA. *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020); *see also iPhone*, 6 F. Supp. 3d at 1022 (finding no standing under Article III, CLRA, and UCL because no "causal link" between misrepresentation and harm).

The following cases illustrate why plaintiffs have no standing against Apple:

- In *May v. Google LLC*, the plaintiff fell victim to a scam involving Google Play gift cards, where "third-party scammers" posing as government agents "fraudulent[ly] induce[d]" her to buy the gift cards and reveal the gift codes to them. 2024 WL 4681604, at *3, *10 (N.D. Cal. Nov. 4, 2024). The plaintiff brought UCL and CLRA claims against Google, claiming it should have warned her about these scams before she purchased the gift cards. *Id.* at *3. The court dismissed both claims for "lack of statutory standing" because she "failed to allege that she suffered harm as a result of Google's misconduct." *Id.* at *10–11. The plaintiff had "suffered economic harm because of third-party scammers' fraudulent inducement, not Google's

omission or misrepresentation." *Id.* at *10.

- In *In re Firearm Cases*, several California cities and counties sued the makers and sellers of handguns under the UCL, alleging that their conduct "enables criminals to acquire the firearms." 126 Cal. App. 4th 959, 967 (2005). But the "plaintiffs[] fail[ed] to establish a causal connection between the alleged unfair practices and the harm." *Id.* In affirming summary judgment for the defendants, the Court of Appeal explained that they "did not control the wrongful acts" of third parties like the "specific retailers [who] were illegally supplying guns to the crime gun market," and there was no evidence the defendants "encourage[d] others to engage in questionable acts." *Id.* at 984–85.
- In *Graham v. Bank of America*, 226 Cal. App. 4th 594 (2014), the plaintiff brought a UCL claim against Bank of America and others, alleging they tricked him into taking out a home loan on which he later defaulted. *Id.* at 600–01, 603, 608–09. The plaintiff claimed as damages the diminution in the value of his home, the money he paid to close the loan, and the risk of foreclosure. *Id.* at 608–09. But there was no standing because the plaintiff did "not allege sufficient facts showing a causal link between the alleged UCL violations and an injury in fact resulting in loss of money or property." *Id.* at 614. To the extent he claimed the devaluation of his home as damages, that was the "result of an overall decline in the market," not defendants' conduct. *Id.* And "[t]he risk of property loss from foreclosure [was] the result of [the plaintiff's] default on the loan, not the alleged conduct by defendants." *Id.* at 609; *see also id.* at 614.
- In *Lorenzo v. Qualcomm Inc.*, the plaintiff brought UCL claims against Qualcomm, alleging that it misrepresented to certain standard-setting organizations that it would license its cell phone technology to them on fair terms, and that because of Qualcomm's misrepresentations, he paid more for his phone than he otherwise would have. 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009). The court found the "relationship between Plaintiff's purported injury and Qualcomm's unlawful, unfair and/or fraudulent conduct [to be] remote [and] attenuated" in part because there were "at least three intermediaries between Qualcomm's misrepresentations . . . and Plaintiff's purported injury." *Id.*

Here, plaintiffs' claims suffer from the same overarching defects in causation. They "suffered

economic harm due to the fraud[] [committed] by the third-party scammers" who duped them into depositing money into the scam apps, but plaintiffs do "not allege [Apple] induced [them]" to deposit that money or that Apple had anything to do with the crypto scams. *Google*, 2024 WL 4681604, at *10. There are several "intermediaries" between Apple's alleged conduct and plaintiffs' losses of their crypto investments—Kevin Wilson, his co-conspirators, the developers who developed the scam apps, and the list goes on. *Qualcomm*, 2009 WL 2448375, at *6.

Allowing plaintiffs to recover their lost crypto investments from Apple would also violate principles of fairness underlying the UCL, which, as the California Court of Appeal has explained, is "not so elastic as to stretch the imposition of liability to conduct that is not connected to the harm by causative evidence." *Firearm Cases*, 126 Cal. App. 4th at 981. Courts have applied similar limits on causation in the torts context, recognizing that "legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay." *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 154 (2018) (citation omitted). In *Modisette*, for instance, the Court of Appeal held that the plaintiffs' injuries, sustained in a car crash, were caused by the driver of the car that hit them, not by anything Apple allegedly did or didn't do to distract drivers when it designed iPhones. *Id.* Similar principles should apply here because plaintiffs were allegedly scammed by third parties, not by Apple. Simply put, "the gap between" Apple's alleged conduct and plaintiffs' alleged injuries is too great to "hold Apple responsible." *Id.* at 155; *see also Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 685 (2010) (absolving the defendant manufacturer of liability because plaintiff's misuse of product constituted a superseding cause).

**b. Plaintiffs do not and cannot plead reliance**

Plaintiffs also have not plausibly alleged that they saw Apple's purported representations about the App Store and took some detrimental action based on what they saw. *See Guzman*, 2020 WL 2477684, at *3 (dismissing UCL and CLRA claims for failure to show actual reliance); *iPhone*, 6 F. Supp. 3d at 1015 (explaining that "actual reliance is an essential element of standing . . . under Article III, as well as the CLRA and UCL" and finding that plaintiffs "failed to establish a genuine issue of material fact concerning actual reliance"). And as for any purported omissions, plaintiffs fail to plead "how, if the allegedly omitted material had been disclosed, [they] would have been aware of it and

behaved differently." *Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *6 (S.D. Cal. Dec. 23, 2015).

First, all three plaintiffs claim they "overpaid" for their iPhones "[b]ecause" of Apple's statements about App Store security, but none of them identify a single statement they allegedly *saw and relied on before purchasing their devices*. Compl. ¶¶ 49 (Kapil), 55 (Gomez), 60 (Sallen). Indeed, the *sixteen* paragraphs of the complaint that recount plaintiffs' "experiences" contain no citation or quotation to *any* specific statement by Apple. *Id.* ¶¶ 45–60. This is fatal to their UCL and CLRA claims—if they "did not see the allegedly offending statements before" buying their iPhones, then Apple's statements "cannot be said to have influenced" the purchases, and they "cannot state a claim that derives from this theory of misrepresentation." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016); *see also Sloma v. Mercedes-Benz USA, LLC*, 2009 WL 10675023, at *3 (C.D. Cal. July 14, 2009) (dismissing UCL and CLRA claims for lack of reliance because "Plaintiff does not allege that she saw, read, or heard any representation regarding the Mercedes-Benz warranty before she leased her vehicle"); *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1200–01 (N.D. Cal. 2014) ("By definition, the CLRA does not apply to unfair or deceptive practices that occur *after* the sale or lease has occurred."). In fact, plaintiffs claim to have "accessed" many of the alleged statements about the App Store in 2024 (*see, e.g.*, Compl. ¶¶ 17 n.2, 24 n.4, 27 n.4), well after Kapil and Gomez purchased their phones in 2018 and 2021, respectively (*id.* ¶¶ 47, 52). And although Sallen does not identify when she purchased her iPhone 12 (*id.* ¶ 57), it is implausible that the statements she identifies from 2024 influenced that purchase—after all, she was using her iPhone 12 in 2023, when Kevin Wilson duped her to invest money into his scam (*id.* ¶ 58).

Nor do any of the plaintiffs allege that they purchased their iPhones with the intent to download the types of apps to which they allegedly fell prey. To the contrary, the allegations suggest that only *after* purchasing their iPhones did the plaintiffs learn of, and then shortly thereafter, download the apps at issue. *Id.* ¶¶ 45, 47 (Kapil both joining the forum and downloading app in August 2023); *id.* ¶¶ 50, 52 (Gomez joining forum in August 2023 and downloading apps in October 2023); *id.* ¶ 56 (Sallen joining forum in "fall of 2023" and downloading apps in September 2023).

Second, plaintiffs haven't alleged that they relied on any specific Apple statements about app security or safety before downloading and investing money in the scam crypto apps. At most, plaintiffs

have alleged reliance on generalized safety assertions, but that is insufficient for purposes of a UCL or CLRA claim. Plaintiff Kapil, for example, alleges he relied on the "overall impression" of safety that "Apple has cultivated" and on various unidentified representations "as alleged" elsewhere in his complaint. *Id.* ¶ 47. These same vague allegations are copied and pasted for plaintiffs Gomez (*id.* ¶ 52) and Sallen (*id.* ¶ 57). Because the complaint "fails to . . . connect any specific Plaintiff to any specific representation," plaintiffs have failed to adequately allege that they relied on any particular statement by Apple. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014); *see also Young v. Cree, Inc.*, 2018 WL 1710181, at *6–7 (N.D. Cal. Apr. 9, 2018) (dismissing CLRA and UCL claims for lack of reliance because "plaintiff . . . does not identify the specific representations on which he relied," even though he did identify "the specific advertisements and marketing materials" that he claimed were "false and misleading").

Third, plaintiffs tacitly acknowledge that they didn't rely on any particular statements, so they pivot to an alternate theory. In support of their UCL claim, plaintiffs include a conclusory allegation that Apple engaged in a "long-term campaign promis[ing] that apps from its App Store are legitimate, safe and secure and can be downloaded with confidence." Compl. ¶ 77. Plaintiffs evidently seek to invoke the narrow "*Tobacco II*" exception to the general requirement of actual reliance on specific statements. In *In re Tobacco II Cases*, the California Supreme Court held that "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." 46 Cal. 4th 298, 328 (2009).

Here, however, plaintiffs' allegations fall far short of pleading a "long-term advertising campaign" of the sort at issue in *Tobacco II*, so the narrow exception to the reliance requirement is inapplicable. *Opperman*, 87 F. Supp. 3d at 1051. In *Opperman*, the court identified several "factors" relevant to whether to apply the *Tobacco II* exception to the reliance requirement, including that the "advertising campaign at issue should be sufficiently lengthy in duration, and widespread in dissemination," as opposed to representations "buried on a rarely-viewed webpage." *Id.* at 1048, 1051. The plaintiff must also establish not only the "length" of the advertising campaign, but also "the extent"—namely, "how often the advertisements were published, or in which media." *Id.* at 1051.

Plaintiffs come nowhere near meeting these factors. Significantly, plaintiffs are not relying on *any advertisements* at all. Instead, Plaintiffs quote from a letter that the late Steve Jobs wrote in 2007—before the App Store even opened—which referenced "protecting users from malicious programs." Compl. ¶ 23. Plaintiffs string that quote together with a host of unrelated statements from 2024 taken from Apple's own website—where Apple describes that it is committed to delivering "amazing experiences" through the App Store, the protections it has put in place to safeguard against "viruses," and its standards for cryptocurrency app submissions (*id.* ¶¶ 17 n.2, 24 n.4, 30 n.11). This jumble of alleged public statements—with a 17-year gap between them—bears no resemblance to the tobacco industry's pervasive, "decades-long campaign of deceptive advertising and misleading statements about the addictive nature of nicotine and the relationship between tobacco use and disease," at issue in *Tobacco II*. 46 Cal. 4th at 306. Among other things, there was no advertising campaign here at all. And Apple's alleged "campaign" of public statements on its website were not sufficiently lengthy and pervasive; most of those statements were made during a two-month period in 2024 (*see, e.g.*, Compl. ¶¶ 24 n.4, 27 n.7), despite plaintiffs' conclusory allegation the "campaign" lasted "two decades" (*id.* ¶¶ 33, 77). *See In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *12 (N.D. Cal. July 23, 2013) (finding six-month campaign insufficient under *Tobacco II*). The complaint is also devoid of any details concerning the *extent* of the "campaign"; it says nothing about how often the statements were made, or whether they were available in other media beyond Apple's own website. *See Opperman*, 87 F. Supp. 3d at 1051. Because "Plaintiffs have not alleged that the campaign here was comparable to that at issue in *Tobacco II*," the UCL and CLRA claims should be dismissed for failure to plead reliance. *iPhone 4S*, 2013 WL 3829653, at *12; *see also Opperman*, 87 F. Supp. 3d at 1051.

**2. Plaintiffs separately do not have standing under the CLRA**

Plaintiffs also do not have standing under the CLRA because they have not pleaded that Apple's allegedly deceptive practices resulted "in the sale or lease of goods or services." Cal. Civ. Code § 1770(a).

While plaintiffs claim in boilerplate fashion that the "goods or services" at issue are their iPhones (Compl. ¶ 85), their allegations make clear they're really complaining about the scam crypto apps they downloaded and invested money into. They allege, for example, that "Apple caused [them]

to download apps created solely for 'pig butchering' schemes and hence to suffer significant economic losses." *Id.* ¶ 6. They also allege they "began transferring money" into the apps "[i]n reliance" on various unidentified statements Apple purportedly made about the App Store. *Id.* ¶¶ 47 (Kapil), 52 (Gomez), 57 (Sallen). But as to their iPhones themselves, plaintiffs are silent and do not even attempt to allege they relied on any Apple statements—identified or unidentified—when purchasing them. Rather, plaintiffs allege the model numbers of their phones, the cellular carriers that sold them, and the prices they paid. *Id.* And while they claim they overpaid for their phones, they do not allege what their cellular carriers (or Apple) should have charged. *Id.* ¶¶ 49 (Kapil), 55 (Gomez), 60 (Sallen).

The complaint thus makes clear the "goods or services" at issue are the crypto apps. Plaintiffs do not contend they paid anything (let alone to Apple) to download those apps and therefore lack standing to pursue CLRA claim. They have not adequately pleaded a "sale or lease of goods or services" under the statute. *Coffee v. Google*, 2022 WL 94986, at *9 (N.D. Cal. Jan. 10, 2022) (no standing under CLRA where "Plaintiffs do not allege that the free download of video games qualifies as 'the sale or lease of goods' under the CLRA"). Plaintiffs also cannot claim as a "good or service" the cryptocurrency they believed they were purchasing. *See id.* at *10 ("To the extent Plaintiffs are asking the Court to reconsider its conclusion that the purchase of virtual currency does not qualify as the purchase of a good or service under the CLRA, the Court declines to do so."); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (same); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (same).

**B. Plaintiffs' UCL and CLRA claims fail on the merits for additional reasons**

Even assuming for argument's sake that plaintiffs had standing to pursue their UCL and CLRA claims, those claims otherwise fail on the merits because plaintiffs have not pleaded with particularity any false or misleading statement and have not identified any actionable omission under Rule 9(b). The entire complaint is based on Apple's alleged misstatements about the safety and security of apps on the App Store (*see, e.g.*, Compl. ¶¶ 76–81 (UCL), 87–90 (CLRA)), and the information it allegedly failed to "disclose[] [about] the true nature of the representations at issue" (*id.* ¶¶ 81 (UCL); *see also id.* ¶ 87 (CLRA)). Since plaintiffs' claims are "grounded in fraud," the "entire complaint must . . . be pleaded with particularity" under Rule 9(b). *Kearns*, 567 F.3d at 1127–28. And because plaintiffs do

not identify with particularity any false or misleading statement or omission, the entirety of their UCL claim (including all three prongs for unlawful, unfair, and fraudulent conduct) and the CLRA claim fail. *Id.* (affirming dismissal of UCL and CLRA claims because plaintiff did not plead them with the requisite particularity); *see also id.* (finding no need to "separately analyz[e]" each prong under the UCL because of the failure to satisfy Rule 9(b)); *Rutter v. Apple Inc.*, 2022 WL 1443336, at *9 (N.D. Cal. May 6, 2022) (dismissing "[a]ll of Plaintiffs' consumer protection claims" because they were "based on Apple's alleged misrepresentations" but not pleaded with the requisite particularity). Also, plaintiffs' claim under the "unlawful" prong of the UCL separately fails because they have not sufficiently pleaded a predicate violation of another statute.

**1. Plaintiffs fail to plead a false or misleading statement under Rule 9(b)**

Plaintiffs allege two broad categories of misrepresentations: (1) Apple's generalized statements about safety and security on its App Store (*see, e.g.*, Compl. ¶¶ 17, 22–26, 32); and (2) various App Review Guidelines that Apple directs app developers to follow before submitting their apps for download on the App Store (*see, e.g.*, *id.* ¶¶ 27–31). Plaintiffs' fraud-based claims fail under Rule 9(b) because they have not pleaded "what is false or misleading" about the alleged statements, and "why" they are false or misleading. *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 558−59 (N.D. Cal. 2019) (dismissing UCL claim where plaintiffs failed to plead what was false or misleading about Apple's "rigorous testing methods" statements and why they were false); *Diep v. Apple Inc.*, 2024 WL 1299995, at *3 (9th Cir. Mar. 27, 2024) (affirming dismissal of UCL and CLRA claims because plaintiffs "do not explain why [the] statements would be misleading to a reasonable consumer").

First, plaintiffs contend that Apple's statements about "the safety and security" of apps available on the App Store were false or misleading because three of those apps turned out to be scams to which plaintiffs eventually lost money. *See, e.g.*, Compl. ¶ 47. In reality, Apple's alleged statements are about a very specific kind of security—which had nothing to do with the scams to which plaintiffs fell prey. In paragraphs 24–26, Plaintiffs assert that Apple states, among other things, that:

- "apps come from known sources, are free of known malware, and haven't been tampered with at the time of installation or launch." *Id.* ¶ 25.
- the "App Store Review Guidelines require apps to be safe, provide a good user experience

comply with our privacy rules, secure devices from malware and threats, and use approved business models." *Id.*

- due to various protections Apple has put in place, "users can access . . . apps on their Apple devices without undue fear of viruses, malware, or unauthorized attacks." *Id.* ¶ 24.

These statements would lead a reasonable consumer to believe that Apple does its best to protect against viruses and malware and to ensure that apps are safe to download and launch on users' devices. But Apple's efforts to weed out viruses and malware on the front end, before apps make it into the App Store, have nothing to do with the sorts of scams at issue here—which are based on third parties' misconduct and interactions occurring outside of the apps themselves, none of which is visible to Apple during its review. And more importantly, plaintiffs do not explain what is false or misleading about any of these statements. Plaintiffs do not allege that their devices became infected with malware because they installed the cryptocurrency apps, or that any malware-infected apps caused them to lose data. They also do not allege that they had any problems installing or launching the apps. Because plaintiffs have failed to identify what was "false or misleading" about the alleged statements, their claims fail. *Ahern*, 411 F. Supp. 3d at 558−59.

Second, Plaintiffs identify quotes from Apple's App Review Guidelines, but these are similarly not actionable. The App Review Guidelines are available on a subdomain directed at *app developers*, not end users of the apps themselves. *See* Compl., ¶ 27 n.7 (linking to https://developer.apple.com/app-store/review/guidelines); *see also id.* ¶¶ 27–31 nn.7–12 (quoting sections of the Guidelines); *id.* ¶ 87 (alleging "Apple does not permit apps that violate its developer guidelines"). The App Review Guidelines provide standards that *app developers* must comply with to offer an app on the App Store; through the enforcement of these Guidelines, Apple is able to maintain a safe, secure, and high-quality platform for users. *See id.* ¶¶ 28–29 (quoting sections of the Guidelines).

Plaintiffs do not plausibly allege that any of the quoted App Review Guideline text is false or misleading. For example, Guideline 3.1.5 states, among other things, that apps may facilitate cryptocurrency transactions "provided they are offered only in countries or regions where the app has appropriate licensing and permissions to provide a cryptocurrency exchange." *Id.* ¶ 30. In connection with protecting user privacy and ensuring fair data-collection policies, Apple states in Guideline 5.1.1

that apps in "highly regulated fields . . . or that require sensitive user information should be submitted by a legal entity that provides the services, and not by an individual developer." *Id.* ¶ 31. Apple also tells developers that their "Apps should never prey on users or attempt to rip off customers." *Id.* ¶ 28 (citation and quotations omitted). And Apple lets developers know that if an app is later identified as engaging in "fraud and malicious activity, the app is immediately removed from the App Store." *Id.* ¶ 32; *see also* Apple, App Review Guidelines § 5.6, https://developer.apple.com/app-store/review/guidelines/#legal (last updated Sept. 13, 2024) ("Repeated manipulative or misleading behavior or other fraudulent conduct will lead to your removal from the Apple Developer Program"); *id.* ("Your Developer Program account will be terminated if you engage in activities or actions that are not in accordance with the Developer Code of Conduct.").[1]

The quotes above tell app developers what Apple expects of them before their apps can be made available in the App Store, and under what circumstances the apps may be removed from the App Store. These are not guarantees to end users that every app that makes it into the App Store will at all times perfectly comply with every Guideline. To the contrary, Paragraph 32 of the complaint quotes Apple's acknowledgement that sometimes an "app makes it into the App Store but is then later discovered to violate [the] [Guidelines]." Compl. ¶ 32. That a developer violates the Guidelines, and that Apple removes the app after discovering the violation, does not mean that Apple failed to enforce its Guidelines. *See Davidson v. Apple Inc.*, 2017 WL 3149305, at *12 (N.D. Cal. July 25, 2017) ("It is not false to represent the iPhone has titanium inserts when it in fact has them, even if those titanium inserts may fail." (cleaned up)). In particular, plaintiffs do not allege that the scam crypto apps were submitted without the appropriate licensing or that Apple allowed them to remain on the App Store after the misconduct was identified. In fact, Plaintiffs admit that Apple adhered to its Guidelines by removing the apps expeditiously once the problems became known. Compl. ¶¶ 54, 55, 58.

---

[1] The Court may consider the entirety of the App Review Guidelines in ruling on this motion because the Guidelines are "incorporated by reference" in the complaint—plaintiffs "refer extensively to" the Guidelines and they "form[] the basis of [plaintiffs'] claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). In other words, the Court is not limited to the snippets of the Guidelines that plaintiffs quote from or refer to in their complaint. Rather, the Court "can consider each document *in its entirety* and not rely solely on the excerpts plaintiff[s] plead[]." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1119 (C.D. Cal. 2015) (emphasis in original).

Moreover, even if any of the above statements could be deemed misleading in isolation, any conceivable consumer confusion would have been wiped away by the broader context of all the other statements explaining what App Store safety and security actually mean. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 883−84 (9th Cir. 2021) (affirming dismissal of UCL and CLRA claims because "other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar"). Plaintiffs' theory is that Apple gave them the "overall impression" that they could never be scammed by any apps they chose to download and invest money into. Compl. ¶¶ 47, 52, 57. That theory bears no resemblance to Apple's actual statements as alleged in the complaint. Apple represents that it does its best to guard against viruses and imposes standards on app submissions. Plaintiffs cannot transform these true statements into some sort of guarantee that third-party app developers will never use their apps for malicious purposes, like the crypto scammers allegedly did here. *See Ahern*, 411 F. Supp. 3d at 559 (statement that Apple rigorously tested its products was not false, "as Plaintiffs do not allege that Apple never tested its products"). Apple cannot predict this sort of misconduct by independent actors—wholly outside of Apple's control—when it reviews apps for publication on the App Store. So, the best way for Apple to address these kinds of problems is to investigate them if they happen, which plaintiffs concede is exactly what Apple did here. *See* Compl. ¶¶ 54, 55, 58. None of these apps are currently on the App Store. *See id.*

**2. Plaintiffs fail to plead an actionable omission**

Plaintiffs also fail to state a claim under the UCL and CLRA based on Apple's alleged failure to "disclose[] the true nature of the representations at issue," which, they claim, caused them to overpay for their iPhones. *Id.* ¶ 81 (UCL); *see also id.* ¶ 87 (CLRA). Plaintiffs fail to plead with particularity under Rule 9(b) what information Apple omitted or that Apple knew about the scam apps when plaintiffs bought their devices. And in any case, plaintiffs have not adequately pleaded Apple had a duty to disclose anything.

Plaintiffs' omission-based claims fail to "describe the content of the omission and where the omitted information should or could have been revealed." *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014) (citation and quotations omitted). Plaintiffs vaguely allege

that Apple should have disclosed that "the representations discussed herein" were false and misleading (Compl. ¶ 87), but courts have found that sort of boilerplate pleading to be insufficient under Rule 9(b). *Sims*, 2014 WL 12558251, at *4–5; *see also Simon v. SeaWorld Parks & Ent., Inc.*, 2022 WL 1594338, at *6 (S.D. Cal. May 19, 2022) (dismissing CLRA and UCL claims because "it is not clear what 'material facts' Plaintiff alleges SeaWorld failed to disclose").

Further, these claims fail because manufacturers like Apple do not have a duty to disclose information of which they were unaware at the time plaintiffs bought their devices. *Simon*, 2022 WL 1594338, at *6. Under the facts alleged here, Apple could not have warned plaintiffs of the crypto scam before they purchased their iPhones. That is because the scam at issue—the draining of plaintiffs' cryptocurrency accounts—did not occur until the scammers decided to steal the money, which allegedly happened in late 2023 and early 2024. *See* Compl. ¶¶ 49 (Kapil), 54–55 (Gomez), 58–59 (Sallen). Plaintiffs do not allege any facts suggesting that Apple somehow knew this would happen, let alone when it became aware of the scam. *Simon*, 2022 WL 1594338, at *6 (finding no duty to disclose where "Plaintiff has not sufficiently alleged that Defendant was aware and actively concealed this information at the time of Plaintiff's purchase of the [device]").

Finally, plaintiffs' omission-based claims fail because they have not otherwise alleged that Apple had a duty to disclose that three crypto apps were scams. *Hodson v. Mars, Inc.*, 891 F.3d 857, 863–64 (9th Cir. 2018) (affirming dismissal of UCL and CLRA claims in labelling case because "Plaintiff has not sufficiently pleaded that Mars had a duty to disclose"). Under California law, an omission is actionable if it was of "a fact the defendant was obliged to disclose." *Id.* at 861 (citation and quotation marks omitted) (emphasis removed). To plead a duty to disclose under the UCL and CLRA, plaintiffs must allege (1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Id.* at 863.

Plaintiffs have failed to allege sufficient facts giving rise to a duty to disclose risks related to

the scam apps. *First*, they have failed to allege any defect central to the iPhone's or the App Store's functions. That three apps turned out to be scams does not render the iPhone or the App Store "unusable as sold." *Ahern*, 411 F. Supp. 3d at 567–68. *Second*, plaintiffs have failed to allege facts supporting any of the four factors giving rise to a duty to disclose. Apple is not plaintiffs' fiduciary. It did not have exclusive (or *any*) knowledge that the apps were scams, nor are there any allegations suggesting Apple actively concealed from plaintiffs that these apps were scams. Because "Plaintiff[s] offer[] no affirmative acts on the part of [Apple] in hiding, concealing or covering up" the scam apps, they have not adequately pleaded a duty to disclose. *See Punian v. Gillette Co.*, 2016 WL 1029607, at *16 (N.D. Cal. Mar. 15, 2016) (citation and quotations omitted).

**3. Plaintiffs' UCL claim under the "unlawful" prong separately fails because plaintiffs have not pleaded a predicate violation of the law**

To state a claim under the UCL's "unlawful" prong, a plaintiff must plead a predicate violation and an accompanying economic injury caused by the violation. *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020). Here, plaintiffs point to various CLRA provisions (§§ 1750, 1770), fraud statutes (§§ 1572, 1573, 1709, 1711), and the common law. Compl. ¶ 76. But they make no "serious effort to plead a violation of any of these predicate statutes" or laws. *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LCC*, 2019 WL 6218780, at *4 (S.D. Cal. Nov. 21, 2019) (dismissing UCL claims). Nor do they "plead the specific elements of the statutes" or any "factual support for [their] allegations" that the statutes were violated. *Id.*; *see also Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *5, *8 (S.D. Cal. Nov. 1, 2012) ("If, however, she also intends to plead a UCL claim based upon unlawful and unfair conduct, she must do more than simply say so.").

Moreover, the predicate CLRA claims fail for the same reasons already discussed—namely, the absence of causation, lack of standing, the failure to plead a sale or lease of goods or services, as required by the statute, and the lack of any false or misleading statements or omissions. *Supra* §§ V.A, V.B.1–2. And the statutory/common-law fraud claims fare no better; plaintiffs do not allege that they relied on any purported fraudulent misrepresentation or omission by Apple, a prerequisite for any fraud-based claim. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (dismissing fraud claims under §§ 1572 and 1573 because "Plaintiffs fail to allege that they relied upon

any allegedly fraudulent misrepresentations by Defendant"). In addition, California Civil Code sections 1572, 1709, and 1711, as well as common-law fraud, require fraudulent intent, which plaintiffs do not allege anywhere in the complaint. *See, e.g.*, *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1043 (S.D. Cal. 2018) (dismissing common law fraud claim for, among other reasons, failure to allege fraudulent intent). And because plaintiffs offer no allegations of fraud (*supra* § V.B.1–2), neither section 1709 nor section 1711 can serve as a basis for their UCL claim. *See Moore v. Geico Gen. Ins. Co.*, 2018 WL 500260, at *8 (N.D. Cal. Jan. 19, 2018) (finding, at summary judgment, UCL claim premised on violations of §§ 1572, 1573, 1709, and 1711 failed because no fraud). Because plaintiffs have not adequately pleaded a predicate violation of any other law to support their UCL claim under the "unlawful" prong, that claim should be dismissed.

**C. Plaintiffs are not entitled to restitution or injunctive relief**

Plaintiffs seek restitution and injunctive relief on both their claims. *See* Compl. ¶¶ 83, 95, 97; *id.*, Prayer for Relief ¶¶ C–D. But plaintiffs are not entitled to either form of relief.

*First*, plaintiffs are not entitled to equitable relief because they have "an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). As the Ninth Circuit held in *Sonner*, a plaintiff cannot pursue equitable relief while simultaneously claiming entitlement to legal remedies through another claim (here, the CLRA claim). This principle requires district courts to dismiss claims for equitable relief absent a showing by the plaintiff that she "lacks an adequate remedy at law." *Id.*; *see also Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (explaining that *Sonner* "made clear that a plaintiff's failure to plead inadequate remedies at law dooms the claim for equitable relief at any stage"). Because plaintiffs have alleged claims for legal damages based on the same underlying factual predicate as their request for equitable remedies under the UCL, plaintiffs cannot show that they lack an adequate remedy at law, and the Court should dismiss their equitable claims. *See PhantomALERT v. Apple Inc.*, 2025 WL 71888, at *9 (D.D.C. Jan. 10, 2025) (finding plaintiff "failed to adequately state a claim for injunctive relief" under UCL in part because it "does not claim" that "the damages it seeks are inadequate to compensate for [its] injury" (cleaned up)).

*Second*, plaintiffs are not entitled to restitution from Apple for the purported loss of their crypto

investments because they do not allege that Apple took that money from them. Similarly, plaintiffs Gomez and Sallen are not entitled to restitution from Apple on their overpayment theory because both bought their iPhones from another company (Sprint and Verizon, respectively), so any alleged overpayment went to those other companies, not Apple. Compl. ¶¶ 52, 57.

A claim for restitution under the UCL is evaluated "under the same standard[]" as a claim for restitution under the CLRA. *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020); *see also Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006) (applying UCL standard on restitution to CLRA claim because there "is nothing [in California law] to suggest that the restitution remedy provided under the CLRA should be treated differently"). Under that standard, restitution is limited to "money or property lost by the plaintiff and *acquired by the defendant*." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (emphasis added); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 336 (2011) (similar). This means that a plaintiff must allege "that the defendant is in possession of money or property taken from her" to be able to "show that she is entitled to restitution." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013) (collecting cases).

Plaintiffs do not allege that Apple "acquired" any of the funds they lost in connection with their use of the scam crypto apps. *Fresno Motors*, 771 F.3d at 1135. Rather, plaintiffs allege that the money they invested in the apps was "stolen" by the "perpetrators[]" behind the apps as part of a "cryptocurrency investing scam." Compl. ¶ 5; *see also id.* ¶¶ 49, 55, 60 (alleging the apps took various sums they had deposited into them). There is no "money or property" the Court can order Apple to restore to plaintiffs for their losses from the crypto investments. *See Kwikset*, 51 Cal. 4th at 336.

Similarly, plaintiffs Gomez and Sallen allege they purchased their iPhones from Sprint and Verizon, respectively, and they do not allege that any of the money they supposedly overpaid for their iPhones went to Apple. *See* Compl. ¶¶ 52, 57. So even if plaintiffs Gomez and Sallen were correct that they overpaid for their iPhones, they did not overpay *Apple*. Under these circumstances, Gomez and Sallen cannot legally recover restitution from Apple for any alleged overpayment. *See, e.g.*, *Phillips v. Apple Inc.*, 725 F. App'x 496, 499 (9th Cir. 2018) ("Absent any allegation that Apple directly or indirectly received the money plaintiffs paid their wireless carriers for excess data usage, they are

not entitled to restitution, and the district court properly dismissed their UCL . . . claim[].").

*Third*, plaintiffs do not have standing to pursue injunctive relief under the UCL or CLRA because they fail to allege an imminent threat of future injury and, in any case, seek an injunction that would not redress their alleged injuries.

To demonstrate Article III standing for injunctive relief, a plaintiff must face a threat of injury that is "actual and imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citation omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* at 564 n.2. Thus, the "threatened injury must be certainly impending to constitute the injury in fact and [] allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see also Montana Envt'l Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (holding that there must be a "substantial risk" that the alleged harm will occur). For injunctive relief claims based on an alleged threat of a repeat injury, a plaintiff must show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Additionally, as with any claim brought in federal court, plaintiffs must plausibly allege that their alleged injuries would "be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (cleaned up). This means that "the requested remedy" must "cure the plaintiff's injury." *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1174 (9th Cir. 2024). Plaintiffs' request for injunctive relief fails on both fronts.

In cases like this one where "a previously [allegedly] deceived consumer . . . now knows or suspects that the advertising was false at the time of the original purchase," the Ninth Circuit has delineated narrow circumstances under which the consumer "may [still] have standing to seek an injunction." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). The plaintiff in such cases cannot simply rely on their "[k]nowledge that the advertisement or label was false in the past." *Id.* Rather, they must show either that (1) they "would like to" purchase the product or service in the future but will not because they are unable to rely on the advertising; or (2) they "might purchase the product in the future," while assuming incorrectly that the product or service was improved because they are "continually presented" with product advertising. *Id.* at 970. Plaintiffs cannot satisfy either

scenario.

Most critically, plaintiffs do not allege that they intend to download and use the crypto scam apps ever again. In fact, they allege the apps have all been removed from the App Store, so it would not even be possible for them to do so. *See* Compl. ¶¶ 54, 55, 58. Plaintiffs thus cannot satisfy either of the *Davidson* scenarios, as there is no allegation that they would like to download and use the scam apps (but will be unable to do so because of Apple's representations), or any possibility that they will incorrectly assume that the scam apps have been improved due to Apple's continued representations. *See Davidson*, 889 F.3d at 969. Moreover, even if the crypto scam apps were still available, plaintiffs are now aware of their true nature, which means that "it is unlikely that [they] will again be wronged in a similar way." *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (cleaned up). This leaves plaintiffs unable to show that they face an "imminent or actual threat of future harm due to [Apple's allegedly] false advertising." *Davidson*, 889 F.3d at 971.

Plaintiffs' alleged generalized intent to "purchase App Store apps in the future" does not help them. Compl. ¶ 82. Plaintiffs do not plead any facts showing that they face a "certainly impending" injury from the use of *any other* app on the App Store. *Williams v. Apple Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (cleaned up). Nor could they, because as discussed above, the alleged generalized statements about security and safety of the App Store are true (or at least not misleading when put in the appropriate context). *Supra* § V.B.1–2. And regardless, plaintiffs' general intent to download and use unspecified apps at some unspecified time in the future is not enough to show a "real and immediate threat of repeated injury." *Williams*, 449 F. Supp. 3d at 906. At most, their intent to use the App Store again shows the mere "possib[ility of] future injury," which is not enough to satisfy Article III. *Davidson*, 889 F.3d at 967 (quoting *Clapper*, 568 U.S. at 409); *see also Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

In addition, plaintiffs' request for injunctive relief fails because the injunction they seek—an order "prohibiting" Apple's alleged violations of law "in the future" and "for corrective advertising to inform users regarding Defendant's [alleged] failure to comply with its vetting and review of App Store

apps" (Compl., Prayer For Relief ¶ C)—would not redress their alleged injuries. As plaintiffs concede, Apple already warns users that there may be cases where "an app makes it into the App Store but is then later discovered to violate guidelines." *Id.* ¶ 32. And it also specifically calls out that some apps may be involved in "fraud and malicious activity," in which case they are "immediately removed" from the App Store. *Id.* Plaintiffs also admit that the scam apps have all been removed from the App Store. *Id.* ¶¶ 54–55, 58. So there is nothing in Apple's advertising that needs to be corrected. *See supra* § V.B.1; *see also, e.g.*, *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542–43 (7th Cir. 2017) (finding consumer lacked standing to pursue injunctive relief because the injury was already redressed by the merchant's refund program for the deceptive conduct). This case is much like *Greenstein v. Noblr Reciprocal Exchange*, where the court found plaintiffs lacked standing to pursue declaratory relief because such relief "would not motivate Noblr to change its [data protection] practices," as it "already took immediate action to remedy its unintentional disclosure by changing its policies and masking driver's license numbers in the page source code." 585 F. Supp. 3d 1220, 1232 (N.D. Cal. 2022). Like Noblr, Apple has already taken corrective action by removing the apps and already includes various warnings to users on its website. *See id.*

To the extent plaintiffs seek an injunction "prohibiting [Apple] from committing in the future those violations of law" alleged in the complaint (Compl., Prayer for Relief ¶ C), their request fails because they have not adequately alleged that Apple broke the law in the past, or that it is currently doing so. *Supra* § V.A–B. Where, as here, "there is no injury" that plaintiffs have adequately pleaded and "the requested remedy would not cure" the plaintiffs' alleged injuries, those injuries are "not redressable," and they lack standing to pursue injunctive relief. *See Ariz. All. for Retired Americans*, 117 F.4th at 1174.

**D. The complaint should be dismissed with prejudice**

A court may dismiss a complaint with prejudice if amendment would be "futile." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010). The Ninth Circuit regularly affirms dismissal with prejudice on futility grounds where a plaintiff has not alleged a plausible theory of deception in a false-advertising case. *See, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (affirming dismissal with prejudice after first motion to dismiss in fraud case); *Moore*, 4 F.4th at 877

(same).

Here, plaintiffs' claims fail because they do not (and cannot) allege that Apple caused their injuries, that the alleged statements by Apple were false or misleading, or that they are entitled to restitution or injunctive relief. No amendment will fix these defects. There is nothing plaintiffs could add to the complaint that would change the fact that the scammers, not Apple, took their money, so there is no way for them to overcome their lack of standing or lack of entitlement to restitution. *See supra* §§ V.A., V.C. Similarly, no amendment would render the alleged statements false or misleading because the statements are true. *See id.* § V.B. And finally, there is no way for plaintiffs to amend around the fact that they have an adequate legal remedy in the form of damages, or that they do not face an imminent risk of harm (since the scam apps are no longer on the App Store), which means they will never be able to seek equitable relief. *See id.* § V.C.

## VI. CONCLUSION

The Court should dismiss plaintiffs' claims with prejudice under Rules 12(b)(1) and/or 12(b)(6) for want of Article III and statutory standing. Alternatively, the Court should dismiss plaintiffs' claims with prejudice under Rule 12(b)(6) because their fraud-based allegations do not satisfy Rule 9(b)'s particularity requirement. At the very least, the Court should dismiss plaintiffs' claims with prejudice under Rules 12(b)(1) and/or 12(b)(6) insofar as they seek injunctive relief or restitution.

Dated: March 7, 2025

GIBSON, DUNN & CRUTCHER LLP

*/s/ Kahn A. Scolnick*
Kahn A. Scolnick
*Attorney for Defendant, Apple Inc.*