GIBSON, DUNN & CRUTCHER LLP
KAHN A. SCOLNICK, SBN 228686
kscolnick@gibsondunn.com
JASON C. LO, SBN 219030
jlo@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

GIBSON, DUNN & CRUTCHER LLP
DANA LYNN CRAIG, SBN 251865
dcraig@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SANDEEP KAPIL, GABRIELA GOMEZ, and KIM SALLEN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No. 5:24-cv-09304-NW

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Honorable Noël Wise

Date: July 9, 2025
Time: 9:00 AM
Courtroom: 3

Complaint filed: December 20, 2024

## TABLE OF CONTENTS

Page

I. INTRODUCTION .... 1

II. ARGUMENT .... 2

A. Plaintiffs lack standing .... 2

1. The scammers, not Apple, caused plaintiffs' alleged crypto losses .... 2

2. Plaintiffs do not and cannot plead reliance .... 4

3. Plaintiffs do not have standing under the CLRA .... 7

B. Plaintiffs fail to plead their fraud with particularity under Rule 9(b) .... 7

1. Plaintiffs fail to specify "what" statements were false or misleading .... 7

2. Plaintiffs fail to specify "when" and "how" they saw the alleged statements .... 9

3. Plaintiffs fail to specify "where" they saw the alleged statements .... 10

4. Plaintiffs fail to specify "why" the statements were false or misleading .... 10

C. Plaintiffs fail to state a claim under the UCL's "unlawful" prong because they do not plead a predicate violation of the law .... 13

D. Plaintiffs are not entitled to restitution or injunctive relief .... 13

E. The complaint should be dismissed with prejudice .... 15

III. CONCLUSION .... 15

# TABLE OF AUTHORITIES

Page

## Cases

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ....12

*Am. Philatelic Soc'y v. Claibourne*,
3 Cal. 2d 689 (1935) ....3, 4

*In re Apple Processor Litig.*,
2022 WL 2064975 (N.D. Cal. June 8, 2022) ....7

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ....14, 15

*Berke v. Whole Foods Market, Inc.*,
2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) ....6, 7

*Bryan v. Apple Inc.*,
2023 WL 2333893 (N.D. Cal. Mar. 2, 2023) ....14

*Cabebe v. Nissan*,
2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) ....14

*Diep v. Apple Inc.*,
2024 WL 1299995 (9th Cir. Mar. 27, 2024) ....10, 11, 12

*Diep v. Apple Inc.*,
2022 WL 4021776 (N.D. Cal. Sept. 2, 2022) ....10, 11

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ....12

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005) ....2, 3, 4

*Freeman v. Indochino Apparel, Inc.*,
443 F. Supp. 3d 1107 (N.D. Cal. 2020) ....13

*Graham v. Bank of America, N.A.*,
226 Cal. App. 4th 594 (2014) ....3

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....9, 10

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....14, 15

*Kwikset v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....14

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lessin v. Ford Motor Co.*,
2024 WL 4713898 (S.D. Cal. Nov. 7, 2024) ....................7, 13

*Lorenzo v. Qualcomm Inc.*,
2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ....................3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................2, 15

*May v. Google LLC*,
2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ....................2, 3

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ....................12

*In re NJOY, Inc. Consumer Class Action Litig*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ....................9, 10

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) ....................4

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................5, 6, 10

*In re Oreck Corp.*,
2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ....................8, 9

*Orellana v. Mayorkas*,
6 F.4th 1034 (9th Cir. 2021) ....................6

*Palmer v. Apple Inc.*,
2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ....................8

*Phillips v. Apple Inc.*,
725 F. App'x 496 (9th Cir. 2018) ....................14

*Pirozzi v. Apple Inc.*,
966 F. Supp. 2d 909 (N.D. Cal. 2013) ....................8

*Rubenstein v. The Gap, Inc.*,
14 Cal. App. 5th 870 (2017) ....................12

*Sarun v. Dignity Health*,
232 Cal. App. 4th 1159 (2014) ....................2

*Scheibe v. Esupplements, LLC*,
681 F. Supp. 3d 1101 (S.D. Cal. 2023) ....................13, 14

*Shersher v. Superior Court*,
154 Cal. App. 4th 1491 (2007) ....................14

## TABLE OF AUTHORITIES
(continued)

**Page**

*Sloma v. Mercedes-Benz USA, LLC*, 2009 WL 10675023 (C.D. Cal. July 14, 2009) ....... 5

*Sonner v. Premier Nutrition Corp.*, 971 F. 3d 834 (9th Cir. 2020) ....... 13

*Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193 (C.D. Cal. Sept. 3, 2014) ....... 13

*United States v. King Cnty., Washington*, 122 F.4th 740 (9th Cir. 2024) ....... 2

*Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073 (N.D. Cal. 2011) ....... 10

*Watson v. Crumbl LLC*, 736 F. Supp. 3d 827 (E.D. Cal. 2024) ....... 13

*Young v. Cree, Inc.*, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ....... 5

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) ....... 10

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....... 2

Cal. Civ. Code § 1572 ....... 13

Cal. Civ. Code § 1709 ....... 13

Cal. Civ. Code § 1711 ....... 13

Cal. Civ. Code § 1770(a) ....... 7

Cal. Civ. Code § 1780(a) ....... 2

**Rules**

Fed. R. Civ. P. 9(b) ....... 5, 6, 7, 8, 9, 10, 11, 12

Fed. R. Civ. P. 12(b)(1) ....... 15

Fed. R. Civ. P. 12(b)(6) ....... 11, 15

## I. INTRODUCTION

Plaintiffs' theory boils down to this: Apple failed "to adequately vet" three cryptocurrency apps that third-party scammers later used to steal money from plaintiffs. Compl. ¶ 77. Yet, plaintiffs cannot point to any misleading or false statements made by Apple regarding the safety and security of the App Store. And it's undisputed that Apple removed the scam apps upon learning of the alleged misconduct. In the face of these facts, plaintiffs try to avoid dismissal with confusion rather than precision—conflating Apple with the scammers who took their money and insisting with the benefit of hindsight that Apple should have a degree of prescience about potential wrongdoers akin to *Minority Report*.

Plaintiffs do not have standing because they don't plausibly allege Apple did or said anything that harmed them. Instead, as plaintiffs concede, they were injured by the third-party "fraudsters that perpetrated the fraud against" them (Compl. ¶ 39); their money was "stolen by the scammers," not Apple. (*id.* ¶ 42). And plaintiffs simply are unable to legally attribute those injuries to Apple, and instead must resort to conclusory statements that Apple promised to prevent those injuries. That is not true. The complaint does not point to anything that Apple said it would do about app safety that it failed to do, let alone that Apple told customers it would always be able to prevent the sort of scams at issue here. Nor have plaintiffs sufficiently pleaded reliance on any specific statement(s) that Apple made, either at the time they purchased their iPhones or when they downloaded and transferred money into the scam apps. Plaintiffs' claims also run aground in several other ways, and there are uncurable problems with their sought-after equitable remedies too: (a) there is no allegation that Apple ever possessed the money the crypto scammers stole from plaintiffs, which precludes restitution, and (b) there is no imminent risk of harm, which precludes injunctive relief.

In short, it's regrettable that plaintiffs ever met "Kevin Wilson," the "claimed financial expert" who "encouraged" them to download one of three scam crypto apps. Compl. ¶¶ 45, 50, 56. And surely plaintiffs wish that Wilson and his team had never tricked them into investing millions of dollars into these apps. *E.g.*, *id.* ¶¶ 49, 55, 58–59. But the law cannot be stretched so far as to impose liability on Apple for the third-party wrongdoers' conduct. Apple is not the guarantor of plaintiffs' investment decisions, and it does not and cannot promise to always prevent the sorts of scams to which plaintiffs

fell prey. The Court should dismiss this case with prejudice.

## II. ARGUMENT

### A. Plaintiffs lack standing

Plaintiffs lack standing to sue Apple for either of their alleged injuries—the loss of their crypto investments or their purported overpayment for their iPhones. First, the crypto scammers, not Apple, were the legal cause of the investment losses. Second, plaintiffs fail to plausibly allege that they relied on anything that Apple said or did either when purchasing their iPhones or investing in the crypto apps.

#### 1. The scammers, not Apple, caused plaintiffs' alleged crypto losses

Article III, the UCL, and the CLRA all require plaintiffs to plead a causal connection between their injuries and the alleged misconduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). But plaintiffs here admit it was the "fraudsters [who] perpetuated the fraud," not Apple, which means these scammers (not Apple) are the legal cause of plaintiffs' alleged losses of their crypto investments. *See* Mot. at 6–9.

Plaintiffs accuse Apple of improperly trying to import a proximate cause requirement into Article III, the UCL, and CLRA. Opp. at 6–7. But that deliberately mischaracterizes Apple's argument. At this stage, Apple is invoking the basic requirement of a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged conduct of the defendant, not the result of the independent action of some third party." *Lujan*, 504 U.S. at 560 (cleaned up); *see also United States v. King Cnty., Washington*, 122 F.4th 740, 751 (9th Cir. 2024) (when a plaintiff asserts that the defendant caused injury by influencing the conduct of third parties, the plaintiff must offer facts showing that the defendant was "'at least *a substantial factor* motivating the third parties' actions'" (emphasis added)). In other words, there must be "some connection between the wrongdoing and the harm." *In re Firearm Cases*, 126 Cal. App. 4th 959, 979, 981 (2005) (UCL); *see also Sarun v. Dignity Health*, 232 Cal. App. 4th 1159, 1166 (2014) (CLRA). Here, none exists.

Plaintiffs fail to distinguish the key cases that Apple cited (Mot. at 7–8) where courts found, on similar facts, the absence of causation. First, in *May v. Google LLC*, the court found no UCL or CLRA standing where, as here, the plaintiff "suffered economic harm because of third-party scammers' fraudulent inducement, not [defendant's] omission or misrepresentation." 2024 WL 4681604, at *10

(N.D. Cal. Nov. 4, 2024). Plaintiffs respond that *May* was about Google's omissions, whereas this case is about Apple's alleged "false representations." Opp. at 9. But that difference is immaterial—the causation standard is the same for omissions and misrepresentations, as *May* itself recognized: under the CLRA, "the plaintiff needs to allege that a defendant's *misrepresentation or omission* played a substantial part . . . in influencing the plaintiff's actions which, in turn, led to [her] harm," and under the UCL, she must allege she suffered harm "as a result of" the unfair competition. *May*, 2024 WL 4681604, at *10 (emphasis added) (cleaned up).

Second, it's much the same for *Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594 (2014), which plaintiffs brush aside because it did not involve affirmative misrepresentations. Opp. at 9. Again, though, the requirement of a "causal link" is the same for omissions and misrepresentations. *Graham*, 226 Cal. App. 4th at 614.

Third, plaintiffs fail to grapple with the causation analysis in *In re Firearm Cases*—which found that the "plaintiffs[] fail[ed] to establish a causal connection between the alleged unfair practices and the harm" because none of the manufacturer defendants "provided weapons to criminals" or had any "control" over the "wrongful acts" of third parties. 126 Cal. App. 4th at 967, 984–85. Plaintiffs point out that *In re Firearm Cases* was decided on summary judgment, not a motion to dismiss (Opp. at 9), but that does not matter because even assuming that everything in the complaint is true, there's no allegation that Apple worked in concert with or controlled the scammers who carried out the fraud.

Finally, as to *Lorenzo v. Qualcomm Inc.*, 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009), plaintiffs summarize the case but do not even try to distinguish its causation analysis. Opp. at 9. They also concede that the presence of "intermediaries" between a defendant's alleged misrepresentations and the plaintiffs' injury can render that injury "too remote to support standing." *Id.* Here, of course, the complaint identifies multiple intermediaries (including Kevin Wilson, Wade Brittingham, and the app developers (Compl. ¶¶ 50–51)) that sever the link between Apple's alleged statements and plaintiffs' crypto losses, making their injury too "remote [and] attenuated" to support standing against Apple. *Lorenzo*, 2009 WL 2448375, at *6.

Plaintiffs offer up two of their own cases on standing, but neither moves the needle. Opp. at 8. They lead with *American Philatelic Society v. Claibourne*, where the defendant allegedly faked postage

stamps and attempted to palm them off as genuine. 3 Cal. 2d 689, 691–92 (1935). *Claibourne* predates the UCL by several decades, but the California Supreme Court found that plaintiffs had stated a claim for unfair competition, i.e., "the simulation and imitation of the goods of a rival or competitor." *Id.* at 697. There's nothing remotely similar alleged here; plaintiffs do not manufacture goods that Apple is simulating or imitating, so the case doesn't apply. Even if it did, the defendant in *Claibourne* would be the equivalent of Kevin Wilson and his co-conspirators here because they, not Apple, are the actual perpetrators of the fraud. Indeed, as later courts have noted in distinguishing *Claibourne*, the defendant there "placed into distribution" a product he knew "was faulty when it left his hands, even though he left the additional wrongful act of palming off for others to perform." *Firearm*, 126 Cal. App. 4th at 982. Here, "[w]ithout some hint of participation or encouragement of wrongful conduct, there is no connection between [Apple] and the alleged wrongdoing." *Id.* Again, the complaint contains not even a hint that Apple participated in or encouraged these scams.

Plaintiffs fare no better with their second case, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023). Opp. at 8. *O'Handley* is not a UCL or CLRA case; it's an Article III decision arising out of a civil rights complaint alleging violations of the First and Fourteenth Amendments. *O'Handley*, 62 F.4th at 1155. The plaintiff there claimed his Twitter posts about election fraud were taken down after they were flagged by the office of the then-California Secretary of State. *See id*. at 1161. The Ninth Circuit found the plaintiff had standing to pursue injunctive relief against the Secretary because it was "possible to draw a causal line from [her office's] flagging of the November 12th post to O'Handley's suspension from the [Twitter] platform." *Id*. at 1161–62. But no such line—not even with "twists and turns," *id.*—can be drawn between Apple's alleged representations about the App Store, on the one hand, and plaintiffs' crypto losses, on the other. Plaintiffs don't allege that Apple knew who the scammers were, that it knew when and how they would strike, or that it was connected to the scammers in any other way.

**2. Plaintiffs do not and cannot plead reliance**

As Apple also has demonstrated, the complaint fails to adequately allege that plaintiffs relied on anything that Apple said about app safety when they purchased their iPhones or invested money in the scam crypto apps. Mot. at 9–11. In response, plaintiffs assert two theories of reliance (Opp. at 10–

14), but neither works.

First, plaintiffs say they relied "on Apple's representations on its App Store" and they point to various statements on Apple's website. Opp. at 10–11 (citing Compl. ¶¶ 25, 29). They argue (1) they were each "assured by Apple's representations on its App Store that its apps could be trusted and were secure and safe," and (2) they each "trusted apps from the App Store because of [their] experience[s] with Apple Products, [their] experience[s] downloading and using other apps on the App Store, and the overall impression Apple has cultivated among its customers [] that apps on the App Store are legitimate, vetted, and trustworthy." *Id.* at 11 (citing Compl. ¶¶ 47, 52, 57). Plaintiff Kapil also alleges he reviewed the App Review Guidelines *after* he had begun using the Digicoins app. Compl. ¶ 48.

The timing issue is fatal to plaintiffs' claim: they do not allege that they specifically relied on anything specific that Apple said *before* they bought their iPhones or *before* they put money into the scam apps. At best, their allegations reflect plaintiffs' logical flaw of misconstruing statements regarding, for example, protecting against malware and viruses, into a broad blanket guarantee that Apple never claimed. But plaintiffs must "identify the specific representations on which [they] relied" when either purchasing their iPhones or deciding to use the scam cryptocurrency apps. *Young v. Cree, Inc.*, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018); *see also* Mot. at 10. To do that, they need to "connect[] . . . specific plaintiff[s] to . . . specific representation[s]." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014). The complaint doesn't make those connections; nor could it, since all the statements attributed to Apple are from 2024, *after* plaintiffs bought their iPhones and downloaded the crypto apps. And many of the alleged statements are Apple's directives to app developers (not consumers), so it's highly unlikely that any of the plaintiffs would have reviewed these guidelines and relied on them in any way. *See, e.g.*, *Sloma v. Mercedes-Benz USA, LLC*, 2009 WL 10675023, at *3 (C.D. Cal. July 14, 2009) (dismissing UCL and CLRA claims for lack of reliance because plaintiff did not allege seeing the representation before leasing defendant's vehicle).

Second, plaintiffs claim they relied on Apple's purported long-term advertising campaign about App Store safety. Opp. at 11–14. But as Apple has demonstrated, pleading reliance on such a campaign still requires allegations showing "when and how each named plaintiff was exposed to the [alleged] advertising campaign." *Opperman*, 87 F. Supp. 3d at 1050. And under Rule 9(b), those allegations

must be "plead[ed] with particularity"; it's not enough to allege "general exposure" to the defendant's messaging "without more detail." *Id.* Plaintiffs must "detail *how* they were exposed to Apple's [alleged] advertising campaign." *Id.* at 1052 (emphasis added). Simply alleging they "viewed Apple's website, saw in-store advertisements, and/or [were] aware of Apple representations regarding the safety and security" of the App Store doesn't cut it. *Id.*

None of the plaintiffs here allege when or how they were exposed to Apple's alleged long-term advertising campaign. Again, all of the statements they point to are dated *after* they purchased their iPhones and used the scam apps, which precludes them from alleging they "actually saw or heard" the purported advertising and relied on it before being injured. *Opperman*, 87 F. Supp. 3d at 1048, 1051. Although plaintiffs reference a 2007 Steve Jobs letter from before there was even an App Store, they do not allege any specific reliance on this 2007 letter (or that anything about it was false). *See* Opp. at 10–13. Plaintiffs attempt to sidestep this problem by claiming the statements identified in the complaint were "representative of Apple's long campaign and were quoted because they were the most recent iteration when the [c]omplaint was filed." *Id.* at 13. Even if the Court allows plaintiffs to amend their complaint on the fly to add earlier alleged statements, that would not fix the core problem—plaintiffs still do not identify "when and how" each of them, specifically, was exposed to earlier iterations of Apple's alleged advertising and took some action in reliance on it. *Opperman*, 87 F. Supp. 3d at 1050; *see also Orellana v. Mayorkas*, 6 F.4th 1034 (9th Cir. 2021) ("[T]he district court generally may not consider material outside the pleadings at the motion to dismiss stage.").

Plaintiffs fall back on the vague allegations that they felt "assured" that "apps could be trusted and were secure and safe" and that they had an "overall impression" about the safety of the App Store that Apple allegedly "cultivated among its customers." Opp. at 11; Compl. ¶¶ 47, 52, 57. Tellingly, plaintiffs repeatedly say that they formed these impressions based on their own experiences using Apple products for years, rather than anything Apple specifically said. Compl . ¶¶ 47, 52, 57. As an aside, if plaintiffs are basing this case on their own personal impressions and interpretations of Apple's statements, that would, of course, preclude class certification. But for present purposes, what matters is that plaintiffs cannot rely on their overall impressions to survive Apple's motion. *Berke v. Whole Foods Market, Inc.* is instructive on this point. As here, the plaintiff in *Berke* said he "relied on Whole

Foods' reputation and long-running multi-media campaign for sourcing wholesome and health products." 2020 WL 5802370, at *11 (C.D. Cal. Sept. 18, 2020). He also identified, as plaintiffs do here, certain "general branding statements" he claimed were misleading. *Id*. But the court ultimately dismissed his claims because he did "not allege . . . which statements [he] found to be material in making his purchases." *Id.* Plaintiffs similarly fail to do so here, and their claims should be dismissed. *Id.*; *see also In re Apple Processor Litig.*, 2022 WL 2064975, at *10 (N.D. Cal. June 8, 2022) (dismissing fraud-based CLRA claim because the complaint's "conclusory assertion that Plaintiffs 'were exposed to Apple's marketing of its iDevices' is not supported by any factual allegations that Plaintiff had viewed *any* portion of Apple's campaign prior to their respective . . . purchases").

**3. Plaintiffs do not have standing under the CLRA**

Plaintiffs do not have standing under the CLRA because they fail to allege Apple's practices resulted "in the sale or lease of goods or services." Cal. Civ. Code § 1770(a). Plaintiffs do not contest they downloaded the apps for free and that cryptocurrencies don't qualify as "goods or services" under the statute (Opp. at 14), and have thus waived any argument to the contrary. *See Lessin v. Ford Motor Co.*, 2024 WL 4713898, at *4 (S.D. Cal. Nov. 7, 2024) (waiver where "non-moving party fails to address an argument . . . in the opposition brief"). They instead concede their CLRA claim can proceed only on an overpayment-for-iPhone theory, but as stated above, they have not adequately pleaded reliance on any specific statements before purchasing their iPhones, and thus lack CLRA standing.

**B. Plaintiffs fail to plead their fraud with particularity under Rule 9(b)**

Plaintiffs concede their claims are about Apple's alleged misrepresentations, not any omissions. Opp. at 17. They also agree Rule 9(b) applies to their claims. Opp. at 15–16. But plaintiffs fail to satisfy this heightened pleading burden. Instead of pointing to the who, what, when, where, and why of the alleged misconduct, they merely restate the same conclusory allegations from the complaint and then label them as sufficient. *Id*.

**1. Plaintiffs fail to specify "what" statements were false or misleading**

Plaintiffs characterize the "what" of Apple's wrongdoing here as "represent[ations]" that "apps in its App Store had been vetted and reviewed by Apple and were safe and secure and that cryptocurrency apps meet additional requirements and security standards, including coming from

approved financial institutions and complying with licensing requirements, among others." Opp. at 15 (cleaned up). But these aren't the actual statements Apple is alleged to have made; instead, they are plaintiffs' own restatements of what Apple supposedly said. Rule 9(b) requires plaintiffs to allege the "specific content of the false representations" that make up the false or misleading statements. *Palmer v. Apple Inc.*, 2016 WL 1535087, at *4–5 (N.D. Cal. Apr. 15, 2016) (cleaned up); *see also Pirozzi v. Apple Inc.*, 966 F. Supp. 2d 909, 918–19 (N.D. Cal. 2013) (rejecting misrepresentation theory based on Apple's "reputation for safety" because "[p]laintiff does not allege that she saw or heard, directly or indirectly, any statements supporting Apple's reputation"). Plaintiffs attempt to fill this pleading gap with "specific instances of Apple's representations," and proceed to list a few, but they concede these aren't the specific statements they relied on—they are instead "of the type" of representations on which they claim to have relied. Opp. at 15.

Moreover, plaintiff Gomez claims that following an "Apple chat" exchange and a later conversation with an Apple representative, she formed the impression that "apps from the App Store were all tested and vetted for legitimacy and authenticity, and that she could safely continue to use the SolLuna app." Compl. ¶ 53. Whatever general impressions she may have formed, plaintiff Gomez still needs to specify what she said, or at a minimum what the Apple representatives allegedly told her in response. *See Palmer*, 2016 WL 1535087, at *5 (dismissing fraud-based claims for failure to identify "specific advertisements or statements"). There is no such allegation. Likewise, plaintiff Kapil claims he "reviewed Apple's guidelines and review process for apps available from the App Store, including the particular standards Apple purportedly requires for cryptocurrency exchange apps." Compl. ¶ 48. But he doesn't identify any particular standard that was false or misleading. *See Palmer*, 2016 WL 1535087, at *5 (dismissing fraud-based claims because "plaintiff has not described how those statements were false").

Plaintiffs rely on *In re Oreck Corp.*, where the court held it would be "unfair to require plaintiffs to recall and specify precisely which of the many advertisements they . . . saw [and] relied upon" and that providing examples of "similar" advertisements was sufficient, so long as "all the advertisements convey the core allegedly fraudulent message." 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012). But the court in *Oreck* gave the plaintiffs this leeway because they specifically alleged "which type of

advertising (infomercial, online, etc.) each plaintiff . . . viewed." *Id*. at *1. Here, the complaint simply cobbles together a variety of alleged statements that came after plaintiffs purchased their iPhones and used the scam apps. Each plaintiff then repeats the same conclusory allegation—that Apple's unspecified "representations on its App Store" "assured" them that apps "could be trusted and were safe and secure." Compl. ¶¶ 47 (Kapil), 52 (Gomez), 57 (Sallen). But it is "not sufficient" under Rule 9(b) for plaintiffs "to plead as a group." *See In re NJOY, Inc. Consumer Class Action Litig*, 2014 WL 12586074, at *10 (C.D. Cal. Oct. 20, 2014) (citation omitted). They must instead allege "with particularity their individual exposure," which they fail to do here. *Id.* Because plaintiffs "do not state which [statements] they saw" before taking actions to their detriment, *Oreck* doesn't apply. *Id.*

*Oreck* is also distinguishable because the plaintiffs there alleged they were exposed to a national advertising campaign that utilized several "slightly different advertisements," all articulating "a common allegedly fraudulent message." *Oreck*, 2012 WL 6062047, at *15. Here, plaintiffs pluck statements from various places on Apple's website, which cover a patchwork of different issues: Apple says it is "[d]edicated to trust and safety" (Compl. ¶ 25), that crypto apps should be "offered only in countries or regions where the app has appropriate licensing" (*id.* ¶ 30), and that apps providing services in "highly regulated fields" such as "legal cannabis use" "should be submitted by a legal entity that provides the services" (*id.* ¶ 31). These statements are not "advertisements" and therefore, were not part of an "advertising campaign." *NJOY*, 2014 WL 12586074, at *10. Even if they were, "each advertisement . . . contain[s] different purportedly misleading and/or deceiving representations." *Id.* In short, plaintiffs fail to specify the "what" of the alleged fraud.

**2. Plaintiffs fail to specify "when" and "how" they saw the alleged statements**

Plaintiffs claim to have viewed the alleged statements about safety and security "during their previous experiences owning Apple devices and using the App Store." Opp. at 15. This does not give Apple fair notice of when and how the alleged fraud took place. The lack of specificity is particularly problematic because all three plaintiffs claim to have used Apple products for "decades." Compl. ¶¶ 47, 52, 57. Apple should not have to defend against a fraud cause asserting that plaintiffs viewed allegedly misleading representations at some point, in some manner, over the last twenty years. *See*

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal for failure to articulate "when this statement was made").

The only dates in the complaint that have anything to do with Apple's alleged statements are October 14, 2024, and November 15, 2024. Compl. ¶¶ 27 n.7, 17 n.2. These are the dates on which plaintiffs' *counsel* claim to have "accessed" the statements in the course of drafting the complaint—they are not the dates on which the plaintiffs themselves viewed and relied on any statements to their detriment. Allegations of "general exposure without more detail" is not enough under Rule 9(b). *Opperman*, 87 F. Supp. 3d at 1050; *see also In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (same under the UCL); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1089 (N.D. Cal. 2011) (same under CLRA).

**3. Plaintiffs fail to specify "where" they saw the alleged statements**

"Plaintiffs allege they viewed representations about app vetting and safety on the App Store itself." Opp. at 15 (citations omitted). But *none* of the allegedly problematic statements are actually found on "the App Store itself." *Id.* Rather, according to the complaint, they may be found on www.apple.com (Compl. ¶ 17 n.2), Apple's support pages (*id.*, ¶ 24 n.4), and Apple's App Review Guidelines (*id.*, ¶ 27 n.7). And there is no allegation that any of the plaintiffs saw these particular statements. Because plaintiffs "do not identify . . . where they saw [the statements]—i.e., in a magazine, on [Apple's] website, on [Apple's] product packaging, or in a packaging insert," they fail to specify "where" the fraud took place. *NJOY*, 2014 WL 12586074, at *11.

**4. Plaintiffs fail to specify "why" the statements were false or misleading**

Plaintiffs say "Apple's representations . . . are false and misleading because 'Apple authorized and maintained malicious applications in its App Store that allowed the theft of personal financial assets while representing that apps in its App Store had been vetted and reviewed by Apple and were safe and secure.'" Opp. at 18 (quoting Compl. ¶ 1). This is exactly the kind of conclusory allegation this Court in *Diep v. Apple Inc.* found insufficient under Rule 9(b). 2022 WL 4021776, at *6–7 (N.D. Cal. Sept. 2, 2022), *aff'd in part, remanded in part*, 2024 WL 1299995 (9th Cir. Mar. 27, 2024).

In *Diep*, as here, the plaintiffs sued Apple after downloading and depositing money into a cryptocurrency app; their money was later stolen by third-party hackers. 2022 WL 4021776, at *1.

The plaintiffs brought claims under the UCL and CLRA, alleging that Apple authorized and negligently distributed a phishing app in its App Store, "while continuing to affirmatively represent that the App Store is a 'safe and trust[ed] place.'" *Id.* at *2. The plaintiffs in *Diep* relied on the *same alleged misrepresentations* as plaintiffs here—i.e., that the App Store is a "safe and trusted place," Apple ensures "that the apps we offer are held to the highest standards for privacy, security, and content," and "[b]ecause we offer nearly two million apps – and we want you to feel good about using every single one of them." *Compare id.* at *1 (cleaned up), *with* Compl. ¶ 17, *and* Opp. at 19. But Judge Hamilton in *Diep* dismissed the claims under Rules 9(b) and 12(b)(6) because "plaintiffs' allegations do not specify the 'who, what, when, where, and how' of Apple's wrongdoing," 2022 WL 4021776, at *7. The Ninth Circuit affirmed with leave to amend, holding that "[a]lthough [p]laintiffs do identify a number of Apple's statements they alleged to be 'misleading,' they do not explain why those statements would be misleading to a reasonable consumer." *Diep*, 2024 WL 1299995, at *3. *Diep* warrants dismissal here.

Plaintiffs also don't allege why various other statements in their complaint were false or misleading. For example, according to the complaint, Apple tells app developers that cryptocurrency apps on the App Store must be "appropriately licensed," "come from approved financial institutions," and "meet all relevant legal requirements." Opp. at 18 (quoting complaint). Plaintiffs argue that "Apple does not in fact require . . . apps to meet these requirements" (Opp. at 18), but there is not a single allegation in the complaint supporting this boilerplate assertion. Plaintiffs do not allege what, if any, licensing was missing, what, if any, financial institutions withheld their approval of the apps (or disapproved them), or what, if any, legal requirements the apps failed to meet.

Plaintiffs also allege Apple made statements to the effect that it protects against malware and viruses (*see* Compl. ¶¶ 24–25), but there are zero allegations in the complaint that plaintiffs' iPhones were infected with malware or viruses, let alone in connection with downloading and using the scam crypto apps. Plaintiffs' only response is that "no reasonable consumer would believe Apple employs extensive measures to prevent safety issues like viruses and malware but stops short of addressing well-known and prevalent pig butchering scams." Opp. at 20. But plaintiffs unintentionally illustrate a very important point: Apple does make statements about malware and viruses, but there's no allegation that

Apple made similar statements about preventing the sort of "pig-butchering" scams at issue here. That term is not used in any of the statements attributed to Apple, nor can it be fairly read into any of them. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 558–59 (N.D. Cal. 2019) (representation about "rigorous testing methods" not false or misleading where "Plaintiffs do not allege that Apple never tested its products"). At most, plaintiffs seem to have contorted Apple's *other* statements as somehow implying something about a pig-butchering scam. That's nowhere near enough under Rule 9(b).

Plaintiffs also introduce a strawman by claiming that Apple is focusing on what a "reasonable consumer" would believe, and that this question cannot be resolved on a motion to dismiss. Opp. at 19. But this mischaracterizes Apple's arguments. All of Apple's cited cases were decided under Rule 9(b), not any reasonable-consumer test. *See, e.g.*, *Ahern*, 411 F. Supp. 3d at 558–59; *Diep*, 2024 WL 1299995, at *3. Regardless, courts routinely dismiss such claims on a motion to dismiss. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017) ("[C]ourts courts "can and do sustain demurrers on UCL claims when the facts alleged fail as a matter of law.").

Plaintiffs' restatements are patently unreasonable and inaccurate. They rely on alleged statements that Apple holds apps "to the highest standards for privacy, security, and content," that consumers can "[d]ownload with confidence," and that apps must "use approved business models"—and from those statements, they claim that Apple led them to believe it would prevent the crypto scams at issue here. Opp. at 19. But Apple does not, and has never, made the type of unequivocal guarantee that plaintiffs now claim they relied on. All that Apple says—as plaintiffs concede—is that when an app is engaged in "fraud" or "malicious activity" and manages to slip by Apple's protections on the front end, Apple investigates and then removes the app from the App Store once fraud is uncovered, as happened here. Compl. ¶¶ 32, 54–55, 58. Putting Apple's statements in their appropriate context, no reasonable consumer would believe that Apple guarantees *perfect* security in these circumstances. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 883−84 (9th Cir. 2021) (reasonable consumer would not be deceived considering broader context); *Ebner*, 838 F.3d at 967 (same).

**C. Plaintiffs fail to state a claim under the UCL's "unlawful" prong because they do not plead a predicate violation of the law**

To the extent plaintiffs assert a claim under the UCL's "unlawful" prong, it fails for the additional reason that plaintiffs do not adequately allege the requisite predication violation. *See* Mot. at 19–20. Plaintiffs' only response is a short paragraph declaring that they have "stated a predicate violation under the CLRA" and that they have "sufficiently established reliance on Apple's fraudulent or misleading statements." Opp. at 20–21. But as explained above and in Apple's motion, plaintiffs have neither alleged a viable CLRA claim nor reliance. *Supra* § II.A–B; Mot. at 5–20; *see also, e.g.*, *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) ("If a plaintiff cannot state a claim under the predicate law, however, the [UCL unlawful prong] claim also fails.").

Additionally, plaintiffs' "unlawful" claim fails to the extent it is predicated on California Civil Code Sections 1572, 1709, and 1711, as well as common law fraud, because plaintiffs do not allege that Apple acted with a fraudulent intent. *See* Mot. at 20. Plaintiffs do not respond to this argument and therefore have waived any opposition on this point. *See Lessin*, 2024 WL 4713898, at *4.

**D. Plaintiffs are not entitled to restitution or injunctive relief**

Plaintiffs argue they may seek equitable relief under the UCL and CLRA in addition to any available legal remedies. Opp. at 21. This is wrong. Equitable relief is not available where, as here, plaintiffs have an "adequate remedy at law"—namely, actual damages under the CLRA. *Sonner v. Premier Nutrition Corp.*, 971 F. 3d 834, 844 (9th Cir. 2020); *see* Mot. at 20. Plaintiffs rely on *Freeman v. Indochino Apparel, Inc.*, where the court recognized that the CLRA and UCL "expressly stated" that equitable remedies were available in addition to other legal remedies. 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020). *Freeman*, however, was decided before *Sonner*, where the Ninth Circuit held that regardless of what these statutes say, a plaintiff suing in federal court "must establish that she lacks an adequate remedy at law before securing equitable" remedies. *Sonner*, 971 F.3d at 844.

Although plaintiffs may plead claims for equitable relief in the alternative, they still must "at a minimum allege they have no adequate remedy at law, even at the motion to dismiss stage," and they have not done that here. *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 840 (E.D. Cal. 2024) (dismissing UCL and CLRA claim under *Sonner* for failure to plead an adequate remedy at law); *see also Scheibe*

*v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1110 (S.D. Cal. 2023) (same). Moreover, to plead their claims for equitable relief as an "alternative" to their claims for legal damages, they must do "based on different theories." *Bryan v. Apple Inc.*, 2023 WL 2333893, at *3 (N.D. Cal. Mar. 2, 2023) (cleaned up). But here, both claims are based on the same overpayment-for-iPhone and crypto-loss theories.

Plaintiffs next defend their request for restitution; they contend "[t]here is no requirement that the lost money be tied to a transaction with defendant." Opp. at 23. Plaintiffs appear to be saying they may recover from Apple the money they lost to the crypto scammers despite the fact that Apple never received any of the funds stolen by the fraudsters. *Id.* at 24. But it is black-letter law that a "restitution order . . . requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been *acquired by a defendant*, on the other." *Phillips v. Apple Inc.*, 725 F. App'x 496, 498 (9th Cir. 2018) (emphasis added) (quoting *Kwikset v. Superior Ct.*, 51 Cal. 4th 310, 336 (2011)). This means restitution is unavailable if it "would not replace any money or property that defendants took directly from plaintiff," *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003), or if there are no allegations that Apple took the money "indirectly," *Phillips*, 725 F. App'x at 498–99 (collecting California cases). Here, there is no allegation that Apple received any money stolen by the scammers—directly or indirectly. *Id.* at 498; *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324–25 (C.D. Cal. 2013) (no restitution because no allegations "defendants are in possession of funds rightfully belonging to [plaintiff]" and plaintiff "bought her vehicle from a third party").

As for their alleged overpayment on their iPhones, plaintiffs do not allege their devices were worthless or non-functional, just that they overpaid. In fact, plaintiffs admit they plan to continue to own and use their devices. Opp. at 24 (citing Compl. ¶¶ 82, 95). Plaintiffs do not attempt to specify what the alleged overpayment is or that Apple received a penny of it (as opposed to the carriers who sold plaintiffs Gomez and Sallen the devices), precluding restitution from Apple. Neither of plaintiffs' cited restitution cases help them. In both *Cabebe v. Nissan*, 2018 WL 5617732 (N.D. Cal. Oct. 26, 2018), and *Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007), the plaintiffs had adequately pleaded an "unfair business practice" and alleged the defendants were, as a result, "unjustly enriched." *Cabebe*, 2018 WL 5617732, at *5–6; *see also Shersher*, 154 Cal. App. 4th at 1494. But here, as

discussed above, plaintiffs haven't adequately alleged any plausible claim. Nor do they adequately allege Apple is "in possession of funds rightfully belonging" to them. *Asghari*, 42 F. Supp. 3d at 1324–25 (relying on *Korea Supply*, 29 Cal. 4th at 1140). So the restitution claim fails.

Finally, as to injunctive relief, plaintiffs argue that it's necessary because they "continue to own iPhones and plan to use the App Store," and thus could "unknowingly download another scam app in the future." Opp. at 24. These are just "'some day' intentions" "without any description of concrete plans, or indeed even any specification of *when* the some day will be." *Lujan*, 504 U.S. at 564. Such vague allegations "do not support a finding of the 'actual or imminent' injury" that the Supreme Court "require[s]" for purposes of injunctive relief. *See id.*; *see also* Mot. at 22–24.

### E. The complaint should be dismissed with prejudice

Plaintiffs do not meaningfully respond to Apple's argument that dismissal should be with prejudice. Mot. at 24–25. Nor could they, because the issues Apple has identified are incurable.

## III. CONCLUSION

For these reasons, this Court should dismiss the complaint with prejudice under Rules 12(b)(1) and 12(b)(6).

Dated: April 21, 2025

GIBSON, DUNN & CRUTCHER LLP

*/s/ Kahn A. Scolnick*
Kahn A. Scolnick

*Attorney for Defendant, Apple Inc.*