BLOOD HURST & O'REARDON | LLP

501 West Broadway, Suite 1490 | San Diego, CA 92101
T | 619.338.1100 F | 619.338.1101
www.bholaw.com

Timothy G. Blood
tblood@bholaw.com

July 30, 2026

**VIA CM/ECF FILING**

The Honorable Virginia K. DeMarchi
United States District Court, Northern District of California
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Kapil, et al. v. Apple Inc.*, 5:24-cv-09304-NW (VKD)
Joint Discovery Letter Concerning Protective Order Provisions

Dear Judge DeMarchi:

Pursuant to this Court's Standing Order, the parties submit this joint letter regarding two disputed provisions of an otherwise-agreed protective order. Plaintiffs and Apple have worked cooperatively to significantly narrow their disputes, but despite lead counsel for both sides (Tommy O'Reardon for Plaintiffs and Dana Craig for Apple) meeting and conferring via videoconference on several occasions, including on June 25 and July 16, they have been unable to reach a resolution regarding provisions concerning Apple's proposed data security regimes and named-plaintiff access to materials designated by Apple as "Highly Confidential."

The parties set forth their respective positions below and attach as Exhibits A-D their proposed protective orders, including redlines against this Court's model order. Exhibit E is a chart of the disputed provisions. The parties also respectfully request leave to file, and that the Court consider, proposed Exhibits F–I, which are materials cited by the parties in their respective sections below.

## I. PLAINTIFFS' POSITION

This District's Model Protective Order "contains 'presumptively reasonable conditions' for managing the discovery of highly sensitive materials" and the party seeking deviation must show "'specific harm or prejudice' will result if the court denies the request." *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 U.S. Dist. LEXIS 81814, at *13 (N.D. Cal. June 22, 2016). Plaintiffs agreed to many deviations, but Apple continues to demand burdensome additions and has refused to produce documents absent an entered protective order. The Court should enter Plaintiffs' Proposed Protective Order, attached as Exhibit A.

### Issue 1: Apple's Cybersecurity Provisions Are Unnecessary and Disproportionate

Apple's primary requested addition is a mandatory cybersecurity regime requiring every recipient of Protected Material to comply with ISO 27001, NIST 800-53, CIS Critical

Security Controls, or another "recognized industry or government cybersecurity framework"—compliance regimes built for federal agencies and enterprise IT departments, not a law firm's discovery obligations. The Court should reject that request. Plaintiffs' proposed order already requires an information security management system ("ISMS"), reasonable administrative, physical, and technical safeguards, written security policies and procedures, network-security and encryption technologies, multi-factor authentication, and detailed breach-response obligations. That is more than enough to protect Apple's confidentiality interests.

This Court rejected Apple's same request in *Gamboa v. Apple Inc.*, No. 24-cv-1270-EKL (VKD), 2024 U.S. Dist. LEXIS 215456 (N.D. Cal. Nov. 26, 2024). There, as here, Apple sought to require compliance with the same frameworks. The Court held that Apple had "not demonstrated that compliance with one or more of the strict, standard protocols listed in its proposed provision is necessary," and adopted plaintiffs' ISMS language instead. *Id.* at *2–5. The Court reasoned that Apple identified generalized concerns about cybersecurity but did not identify discovery material that was "particularly sensitive or particularly vulnerable," and Apple's proposal would have applied to all Protected Material regardless of sensitivity. *Id.* at *3–4.

Apple does not satisfy that standard here either. Apple "bears the burden of showing prejudice or harm that will result if the less restrictive standard order [] is imposed." *Rabin v. Google LLC*, 702 F. Supp. 3d 880, 881–82 (N.D. Cal. 2023). Apple's fraud-detection and App Review training materials do not carry that burden. A general description of a document category is not the document-specific showing *Gamboa* requires. Any technology company could describe its internal security tooling in similarly protective terms. Identifying discovery requests by number does not change that: Apple offers no basis to conclude that materials responsive to the discovery requests it identifies differ in kind from the App Store operational and business materials any technology platform maintains, and its "blueprint" framing is the same generalized security-risk narrative *Gamboa* and *Affinity* already rejected.. Its proposal draws no distinction based on sensitivity, and would impose the same compliance regime on every Protected Material in the case, exactly what *Gamboa* rejected. Nor do Apple's citations to general cybersecurity trends satisfy that burden. Law firm breach statistics, FBI advisories, and reports of AI-assisted cyberattacks against unrelated companies are the same "ever-evolving threat landscape" arguments this Court, *Affinity*, and *Société du Figaro* (discussed *infra*) have already rejected, and none identifies anything particular to this case, these documents, or these Plaintiffs.

*Affinity Credit Union v. Apple Inc.* confirms the result. Judge White rejected Apple's attempt to impose "one of three strict security protocols," holding that plaintiffs' ISMS language was "more than sufficient" because it went "above and beyond" the Model Order. No. 22-4174-JSW, 2024 U.S. Dist. LEXIS 58289, at *5–7 (N.D. Cal. Mar. 29, 2024). Apple now argues that the threat landscape has evolved since *Gamboa*, but Judge White already rejected that argument: "although the trend may be to adopt increasingly strict cybersecurity

protocols, the Court finds that Plaintiffs' proposed language is more than sufficient." *Id.* at *5.[1]

Apple's single contrary authority, *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113, ECF No. 124 ¶ 40 (D.N.J. Oct. 7, 2025), is non-binding and distinguishable. That decision rested on a particularized record of source code, trade secrets, and nine intervening technology-company non-parties whose own proprietary materials were at risk — the precise document-specific showing this Court found missing in *Gamboa* and absent here. Apple also misreads Plaintiffs' eDiscovery vendor provision: it supplements, and does not replace, Plaintiffs' ISMS requirement. Counsel handling Protected Material remain subject to the ISMS, MFA, encryption, and written-policy obligations.

Apple's "Data Breach" provisions fail for similar reasons, and this Court already rejected them in *Gamboa*. There, as here (*see* Apple's Proposed Order ¶ 11(b)), Apple argued that "any unauthorized access, use, or disclosure of Protected Materials or devices containing Protected Materials" should be treated as a "Data Breach," triggering more rigorous breach procedures. Even Apple's own cited source draws that distinction, cautioning that a "security breach" is "not necessarily the same thing as a data breach"—precisely the distinction Apple's proposed definition erases.[2] The Court held that ordinary inadvertent-disclosure provisions generally suffice, while more rigorous procedures may be appropriate only for a deliberate security breach. The Court therefore adopted plaintiffs' proposal because it "appropriately distinguishes between these circumstances." *Gamboa*, 2024 U.S. Dist. LEXIS 215456, at *6–8. *Affinity* confirms that Apple's automatic breach-discovery provision (¶ 11(d)) should likewise be rejected: that court refused the identical language because it would "invite satellite disputes unrelated to resolution of this action." 2024 U.S. Dist. LEXIS 58289, at *7–8.

Apple's remaining data breach terms reach too far. Two would force a receiving party to hand its litigation adversary its own "vulnerabilities or flaws" (¶ 11(c)) and security policies (¶ 11(e))—"undermin[ing] the security" the order protects. *See Figaro*, ECF No. 66 (Hr'g Tr.) at 3:17–4:22. A third (¶ 11(b)) requires cooperation so Apple can "satisfy [its] legal, contractual, or other obligations"—vague language that extends far beyond legitimate regulatory notification to sweep in Apple's undisclosed contractual commitments and that could pin Apple's own non-compliance on Plaintiffs. Plaintiffs' proposed language already requires reasonable investigation, mitigation, cooperation, and information sharing for a true breach. If Apple later believes more is needed, it can seek relief from the Court based on the specific facts.

**Issue 2: Named Plaintiffs Should Be Permitted Limited Access to Highly Confidential Material**

---

[1] *See also* Exhibit F (Jan. 20, 2023, Hr'g Tr. from *Société du Figaro, SAS v. Apple Inc.*, No. 4:22-cv-04437-YGR (N.D. Cal.), ECF No. 66 at 3:3–5 (Judge Hixson rejected Apple's specific cybersecurity standards as duplicative and unnecessary because the Model Order's general secured-system requirement is "good enough")).

[2] *2023 Cybersecurity TechReport* (12/8/23).

Apple seeks to categorically bar the named Plaintiffs from reviewing any material it designates "Highly Confidential." Plaintiffs propose a narrow, conditioned exception: disclosure only where counsel reasonably determines it is necessary for this litigation, and only after the plaintiff has executed the Protective Order's Acknowledgment (Ex. A). That is not the "unrestricted access" Apple describes.

Apple's reliance on *Doe v. Kaiser Foundation Health Plan, Inc.* is misplaced. There, plaintiffs sought to extend Attorneys' Eyes Only and Source Code access, the most protected tier in a case already governed by the Tier 2 Model Order because of source code and PHI, to the entire undefined "Receiving Party," with no numerical limit, no necessity requirement, and no showing of harm from denial. 2023 U.S. Dist. LEXIS 213445, at *16–18 (N.D. Cal. Nov. 30, 2023). The court rejected that proposal because it would have erased any distinction between AEO and ordinary Confidential material. *Id.* Plaintiffs' proposal does no such thing: it is limited to the named Plaintiffs, conditioned on necessity, and preserves that distinction.

Nor is Plaintiffs' need "abstract and hypothetical." Counsel must prepare named Plaintiffs for deposition and help them understand their own case, a concrete need in every case, unlike the silence on the record in *Doe*.

Apple's underlying concern in cases restricting named-plaintiff access is competitive misuse: that a plaintiff with a business relationship to the defendant could exploit confidential pricing, contract terms, or strategy in future dealings. That concern is absent here. The named Plaintiffs are individual consumers who purchased or used Apple products and services. None competes with Apple, negotiates commercial terms with Apple, or has any business relationship with Apple that could create a risk of competitive misuse. Apple has identified no Plaintiff, and no category of information, presenting that risk.

Apple's remaining objection, that counsel rather than Apple determines when disclosure is necessary, is the ordinary allocation of responsibility under any protective order. Counsel routinely decide what discovery material to discuss with their own clients, subject to the confidentiality obligations the client has signed. If Apple believes a disclosure was improper, it may raise the issue or seek relief from the Court after the fact.

## II. APPLE'S POSITION[3]

### Issue 1: The data security provisions Apple proposes are reasonable and necessary.

Organized criminal groups and hostile state actors are perpetrating cyberattacks with growing frequency, and law firms are among the most targeted businesses—roughly a quarter of them have experienced at least one data breach.[4] In the last three months alone, four major law firms reported attempted attacks (three of which were successful) by just one criminal

---

3 All hyperlinked-articles cited below are attached as Exhibit G.

4 *2023 Cybersecurity TechReport* (12/8/23).

organization.[5]

Accordingly, Apple has proposed that the parties adopt one of three industry-standard information security management systems, or a viable alternative of Plaintiffs' choice, as well as certain procedures related to data breaches. In a recent case involving the App Store, a court adopted these same requirements due to (1) the "ever-increasing sophistication of malicious actors" and (2) the "likelihood that discovery produced by Apple will include proprietary and extremely confidential materials" that "would likely cause severe and perhaps irreparable harm to Apple" if disclosed.[6] These justifications apply with equal force here.

*Gamboa v. Apple Inc.*, 24-cv-01270-EKL (VKD), Dkt. 42 (N.D. Cal. Nov. 26, 2024) is distinguishable for at least two reasons.

First, unlike *Gamboa*, the "discovery material" here is "particularly sensitive [and] particularly vulnerable." *Gamboa*, Dkt. 42 at 2. This case is about the "safety and legitimacy" of the App Store, Dkt. 49 ("CAC") ¶ 3. Plaintiffs' discovery requests target Apple's "internal systems, tools, or software" to review apps, Ex. H [Rog.7], "the App Review process," *id.* [Rog.9], the materials used to "train[]" Apple employees on how to detect fraud on the App Store, Ex. I [RFP.3], Apple's "processes, procedures and guidelines" for investigating app complaints, *id.* [RFP.4], its "reasons" for "Delisting" apps on the App Store including "internal communications or escalations," *id.* [RFP.9], and its "automated tools" and "fraud-detection systems," *id.* [RFP.23].[7] These are not mere "general description[s] of a document category" or the sort of generalized "business data" at issue in *Gamboa*. Rather, they are "specific discovery material[s]" that go to the core of Apple's protection of the App Store and its hundreds of millions of consumers. *Gamboa*, Dkt. 42. Plaintiffs minimize the importance of this information by describing it as mere "internal security tooling" that "[a]ny technology company" would have. Not so. The App Store is used by "over 850 million average weekly users spanning 175 countries and regions."[8] If documents concerning how Apple secures it were to fall into the wrong hands, they could provide criminals with a blueprint for circumventing that security and victimizing hundreds of millions of consumers. No similar risk was identified or considered by the Court in *Gamboa*.

Second, the threat that such documents could fall into the wrong hands has only accelerated since *Gamboa* in 2024. The FBI has recognized the specific threat to law firms and published two notices in the past year detailing elaborate "social engineering" schemes to circumvent law firm data security protections.[9] And Apple must stay ahead of the ever-evolving (mis)use of AI for cyberattacks—e.g., Anthropic recently reported the "first documented case of a large-scale

---

5 *See, e.g.*, Lewis Brisbois (6/16/26); Jones Day (4/8/26); Fox Rothschild and Weil Gotshal (6/9/26); Blank Rome (7/6/26); WilmerHale (7/15/26).

6 *In re: Apple Inc.*, 2:24-md-03113, Dkt. 124 at 26.

7 Apple has served responses and objections to Plaintiffs' discovery requests but expects to produce documents and information in response to several of them.

8 App Store (6/4/26).

9 Silent Ransom Group (5/23/25) (SRG has "consistently targeted US-based law firms, likely due to the highly sensitive nature of legal industry data"); Silent Ransom Group (5/26/26) (similar).

cyberattack executed without substantial human intervention."[10] Apple's provisions are necessary to address this new reality.

Plaintiffs also cite *Affinity Credit Union v. Apple Inc.*, No. 22-cv-04174-JSW, 2024 U.S. Dist. LEXIS 58289 (N.D. Cal. Mar. 29, 2024), and a *Société du Figaro* hearing transcript, 4:22-cv-04437-YGR (N.D. Cal.). But as with *Gamboa*, those courts weren't presented with a comparable showing to the one Apple makes here—namely, that Plaintiffs' discovery requests specifically target the fraud-detection and App Review systems Apple uses to protect the App Store and its hundreds of millions of users. Nor did they have the benefit of the last two years of cyberthreats, or *In re: Apple Inc.*, which adopted these provisions on a comparable record.

The Court should reject Plaintiffs' proposal. Plaintiffs would replace Apple's clear language with a vague requirement to implement "policies and procedures designed to protect the security and confidentiality" of protected materials. Ex. E at 1. Worse still, Plaintiffs undermine whatever minimal protections their proposal requires by allowing parties who "do[] not have an ISMS" to instead rely entirely on "eDiscovery vendors . . . that maintain [] an ISMS." *Id.* That is what Plaintiffs' counsel say they will do—rely on their eDiscovery vendor. But counsel will themselves inevitably handle Apple's discovery materials too; it makes no sense for that material to receive *less* protection when that happens. A consistent level of protection will ensure cybercriminals cannot take advantage of any "'weak link[s]' in [counsel's] security defenses"[11] and is warranted here given the scope of *Plaintiffs'* allegations and their focus on documents about the safety and security of the App Store. Plaintiffs' argument that Apple's data-security provisions go too far because they would apply to all discovery materials is thus misguided and invites unnecessary disputes about when these provisions should apply to a document or document set.

Moreover, Apple's proposal provides clear and specific procedures for the disclosure, investigation, and remediation of data breaches. It seeks information about the "vulnerabilities or flaws that led to the Data Breach" (¶ 11(c)) and the "ISMS policies and procedures" (¶ 11(e)) in place when the breach occurred not to audit Plaintiffs' security systems but to understand the exposure. If Apple's security blueprints are compromised, Apple must know how the breach occurred to determine if the stolen data is being actively exploited and to meet its own regulatory notification obligations, along with any obligations it has to third parties (¶ 11(b)).

**Issue 2: The named Plaintiffs' request to access Apple's Highly Confidential information is unjustified and unreasonable.**

Plaintiffs insist on giving 40 named plaintiffs access to Apple's Highly Confidential material "where [it] is reasonably necessary for this litigation." This is overbroad and vague in two ways—it doesn't specify *when* disclosure of a document will be "reasonably necessary," and it doesn't specify *who* will make that determination. Plaintiffs' letter is silent on the first question but clear on the second: named Plaintiffs will get access to Apple's Highly Confidential material whenever their "counsel" unilaterally decide it is "necessary for this litigation." This is not the "narrow" provision Plaintiffs claim it to be; the Court should reject it.

---

10 Disrupting AI espionage (11/13/25).

11 Hackers Target Supply Chains' Weak Links in Growing Threat to Companies (9/21/25).

As the party "proposing a modification" to the Model Protective Order, Plaintiffs must "show [that] 'specific harm'" will "result if the court denies [their] request." *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8281690, at *4 (N.D. Cal. Nov. 30, 2023) (cleaned up). Here, Plaintiffs' purported "harm" is abstract and hypothetical. Plaintiffs first say they need access so their counsel can "prepare [them] for deposition." But Plaintiffs identify no types of documents in Apple's possession (let alone Highly Confidential ones) that they will need to prepare for their own depositions. If Plaintiffs have no personal knowledge of such documents, there's no point asking about them in a deposition. Plaintiffs also say they need access to "help them understand their own case." Plaintiffs are silent on the kind of "help" they need, when they will need it, and why it will require access to Highly Confidential information. That counsel may need to discuss certain unidentified documents sometime in the future to "help [Plaintiffs] understand their own case" cannot justify their sweeping request for access to Apple's Highly Confidential documents. *See Doe*, 2023 WL 8281690, at *6. Further, Plaintiffs provide no authority for the notion that named plaintiffs should get access simply because they are consumers, which is irrelevant because it does not show they will suffer a "specific harm" if their request is denied.

Plaintiffs claim their proposed provision—permitting counsel to determine when disclosure is necessary—is "the ordinary allocation of responsibility under any protective order." But giving counsel unilateral authority to determine who can access protected materials based on when it is "reasonably necessary" to the litigation defeats the purpose of a protective order, which is to clearly delineate access and avoid ambiguities. Plaintiffs also say that if Apple believes disclosure is improper, it can raise the issue with the Court "after the fact." But at that point, there will be no way to unring the bell.

Apple has already agreed to give the named Plaintiffs access to Confidential information, and they have not articulated any need to see Apple's Highly Confidential information right now. If that need arises, Apple will meet and confer with Plaintiffs in good faith.

## III. PARTIES' VIEWS ON HEARING

### a. Plaintiffs' Position

Unless the Court has questions for the parties, Plaintiffs do not believe a hearing is necessary. The disputed provisions are narrow, the parties' competing language is attached, and Apple's data-security proposals substantially overlap with provisions resolved in *Gamboa*. Plaintiffs are available for a hearing if the Court believes one would be helpful. Because Apple will not produce documents absent entry of its desired protective order, Plaintiffs respectfully request that the Court resolve the dispute as soon as practicable, with or without a hearing.

### b. Apple's Position

Apple respectfully requests a hearing on both issues as they concern Apple's highly sensitive and carefully protected materials. Apple's counsel is available at the Court's convenience.

## IV. CURRENT PRETRIAL DEADLINES

Current case deadlines are as follows:

- Class Certification Briefing Deadlines:
  - Motion: February 5, 2027
  - Response: March 12, 2027
  - Reply: March 26, 2027
- Hearing on Motion for Class Certification: April 14, 2027, at 9:00 a.m.
- Close of Fact Discovery: May 28, 2027
- Opening Expert Reports: June 25, 2027
- Rebuttal Expert Reports: July 23, 2027
- Close of Expert Discovery: August 13, 2027
- Dispositive Motion and *Daubert* Briefing Deadlines:
  - Motions: September 3, 2027
  - Responses: October 27, 2027
  - Replies: November 10, 2027
- Hearing on Dispositive and Daubert Motions: November 17, 2027, at 9:00 a.m.
- Deadline to File Joint Pretrial Statement: January 12, 2028
- Final Pretrial Conference: January 26, 2028, at 2:00 p.m.
- Trial: February 16, 2028, at 9:00 a.m.

Respectfully submitted,

Dated: July 30, 2026

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
ADAM M. BUCCI (327312)

By: */s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101
tblood@bholaw.com

lhurst@bholaw.com
toreardon@bholaw.com
abucci@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*pro hac vice*)
ANTHONY L. PARKHILL (*pro hac vice*)
205 W. Randolph Street, #1630
Chicago, IL 60606
Tel: 312/621/2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

Dated: July 30, 2026

GIBSON, DUNN & CRUTCHER LLP
KAHN A. SCOLNICK (228686)
JASON C. LO (219030)
JASON S. KIM (307532)

By: */s/ Kahn A. Scolnick*
KAHN A. SCOLNICK

333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213/229-7000
213/229-7520 (fax)
kscolnick@gibsondunn.com
jlo@gibsondunn.com
jkim2@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
DANA LYNN CRAIG (251865)
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Tel: 415/393-8200
415/393-8306 (fax)
dcraig@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
NICHOLAS J. BARBA (335315)
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Tel: 949/451-4049
949/475-4649 (fax)
nbarba@gibsondunn.com

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 30, 2026.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD